## A. Lebeau et al. *v.* L. H. Trudeau, Testamentary Executor.

The will of *George Lebeau* contained the following clause:

" I, the undersigned, *George Lebeau*, in the enjoyment of my intellectual faculties, wishing to put my affairs in proper order, and to make my last will, and to make known the persons to whom I bequeath my property:

" After my debts paid, my property shall be divided in equal proportions, among the persons'hereinafter named, that is to say, L. L., P. B., J. D., E. B., J. B., E. W., L. G., L. H. T.

" I have hereinbefore mentioned the names of the persons to whom I bequeath all my property' these are my last testamentary dispositions. I will that they shall be respected."

*Held :* The legacy is made without the testator's having *assigned the part* of each co-legatee. " The assignment of the parts of each co-legatee," (C. C. 1700,) contemplates an express specification and assignment of the respective portions of the legatees, calling each to his particular portion. There is not that specific and distinct assignment of the parts necessary to constitute a distinct legacy to each, of distinct portions of the estate. The testator has called the legatees conjointly to partake equally in the totality of the estate, and mentioned the equality of their portions, for the purpose of regulating the distribution of the totality. The right of accretion takes place, under these clauses.

In the interpretation of a will, the true intentions of the testator are to be searched for, as deduci-.ble from the whole language of the instrument. If there be obscurity or doubt as to the meaning of the testator, in any particular clause, other clauses are to be brought in juxtaposition, an interpretation must be deduced from all of them, if possible, which will make them all harmonize. C. C. 1699, 1700, 1701, 1702.

The intention of the testator is to assign to each of the persons named in the will, a particular portion in the property bequeathed--the assignment of the portion being direct; it is a declaration as to the part each legatee shall receive in the distribution to be made of the net estate ; not a partition of the legatees among themselves, but an assignment of a portion to the legatees severally ; hence there is no right of accretion. *Buchanan,* J., with whom *Voorhies,* J., concurred, dissenting.

APPEAL from the District Court of the Parish of Point Coupée, *Cooly,* J. *Provosty,* for plaintiffs and appellants. *U. B. & E. B. Phillips,* for defendant:

Slidell, C. J. This case presents a question of the right of accretion under a testamentary disposition made in favor of eight legatees, by the following will :*

Je, soussigné, *George Labeau,* jouissant de toutes mes facultés intellectuelles, voulant mettre ordre à mes affaires et faire connaitre mes dernières volontés ainsi que les personnes auxquelles je lègue mon bien.

Je vais parler premièrement de mes dettes. Je dois à Mademoiselle *Emma Bertrand,* comme son tuteur, pour les droits héréditaires provenant de ses père et mère, une somme de cinq cent vingt piastres, ci : $520. C'est à peu près tout ce que je dois, hormis deux petits comptes de marchands.

Je déclare que je donne la liberté à mon petit nègre nommé *Périclès ;* il restera sous la surveillance *d'Elizabeth Wilson,* f. d. c. l., jusqu'à l'âge de vingt-un ans, au cas que la dite *Elizabeth* viendrait à mourir, je le recommande aux

---

*I, the undersigned, *George Lebeau*, in the enjoyment of my intellectual faculties, wishing to put my affairs in proper order, and to make my last will, and to make known the persons to whom I bequeathe my property:

   I will first mention my debts. I owe to Miss *Emma Bertrand*, being her tutor, by reason of her hereditary rights, growing out of the successions of her father and mother, the sum of $520. This is about all I owe, with the exception of two small accounts due merchants.

   I declare that I give freedom to my young negro boy named *Pericles ;* he shall remain under the superintendance of *Elizabeth Wilson*, f. c. w., until he shall attain the age of twenty-one years. In case that the said *Elizabeth* should die, I recommend him to the care of Madam *Groussard*, until he comes to his majority. After my debts paid, my property shall be divided, in equal portions, among the persons hereinafter named, that is to say, *Lesine Lebeau, Polixens Bertrand, John Demoruelle, Emma Bertrand, Jean Bertrand, Elizabeth Wilson, Laure Grousard, L. II. Trudeau .*

   I have hereinbefore mentioned the names of the persons to whom I bequeathe all my property. these are my last testamentary dispositions. I will that they shall be respected.

Fausse Reviere, 21 Juen, 1853.           George Lebeau.

soins de Madame *Grousard* jusqu'à sa majorité. Après mes dettes payées mon bien sera partagé par portions égales aux personnes ci-après nommées savoir : *Lezine Lebeau, Polixene Bertrand, John Demoruelle, Emma Bertrand, Jean Bertrand, Elizabeth Wilson, Laure Grousard, L. H. Trudeau.*

J'ai mentionné ci-dessus les noms des personnes auxquelles je lègue tout mon bien, ce sont mes dernières volontés. Je veux qu'elles soient respectées.

Fausse Rivière, 21 Juin 1853.

GEORGE LEBEAU.

In the interpretation of this will, we are to search for the true intention of the testator, as deducible from the whole language of the instrument which he has framed to express his last wishes. If there be obscurity or doubt as to his meaning in any particular clause, we are to bring other clauses in juxta-position with it, and deduce, if possible, from all, an interpretation which will make them all harmonize.

Approaching the will before us in this spirit, I find no difficulty in discovering the true intention of the testator. I read the will thus : I desire to dispose by this will, of all that I possess, and in no respect to die intestate. I wish my debts first paid ; I liberate my slave ; I give all the residue of my property to *Lezine Lebeau, Polixene Bertrand, John Demoruelle, Emma Bertrand, John Bertrand, Elizabeth Wilson, Laure Grousard, L. H. Trudeau,* to be equally divided among them. No one else is to participate in my estate. They are the persons to whom all my property is to be given. This is the true substance of the will, its unmistakable intention.

To say that by the failure of the legacy as to any one of these eight benefi-- ciaries thus jointly constituted his universal legatees, any other person than they should profit, is to fly in the face of the testator's clear and unequivocal intention ; and surely such a result should not be permitted, unless there be some insuperable provision of law to override that intention. It is not suggested that it can be found any where but in Arts. 1699 and 1702 of our Code. Article 1700 declares, that accretions shall take place for the benefit of the legatees, in case of a legacy being made to several conjointly ; and that the legacy shall be reputed to be made conjointly, when it is made by one and the same disposition, without the testator's having assigned the part of such co-lega- tee in the thing bequeathed. Article 1699 declares, that the right of accretion relative to testamentary dispositions, shall no longer subsist, except in the cases provided for in the Arts. 1699 and 1701. And Article 1702 declares that except in the cases prescribed in the two preceding Articles, every portion of the succession remaining undisposed of, either because the testator has not bequeathed it, either to a legatee or to an instituted heir, or because the heir or the legatee has not been able, or has not been willing to accept it, shall devolve upon the legitimate heirs.

Now here, the legacy is made by one and the same disposition. Is it made without the testator's having assigned the part of each co-legatee in the thing bequeathed? I think it is.

"The assigning of the parts of each co-legatee," means something more than is comprehended in the language of this will, which, according to my understanding of it, simply directs their participation of his whole estate in equal portions. I apprehend the terms used in the Code contemplate an express specification and assignment of the respective portions of the legatees, calling each to his particular part. But in the present case, there is not that specific

and distinct assignment of the parts, which, in my judgment, is necessary to constitute a distinct legacy to each, of a distinct portion of the deceased's fortune. He appears to me, on the contrary, to have called them conjointly to partake equally in the totality of his estate, and has mentioned the equality of their portions for the purpose of regulating the distribution of that totality. They are conjointly his universal legatees.

Judgment affirmed, with costs.

Mr. Justice OGDEN, and Mr. Justice SPOFFORD, concurring.

BUCHANAN, J. (with whom concurred VOORHIES, J.,) dissenting.  *George Lebeau* died in the year 1854, leaving an olographic testament, which was admitted to probate and execution, and which contained the following clause :

"Après mes dettes payées, mon bien sera partagé par portions égales aux personnes ci-après nommées, savoir ; *Lezine Lebeau, Polixene Bertrand, John Demoruelle, Emma Bertrand, Jean Bertrand, Elizabeth Wilson, Laure Grousard, L. H. Trudeau.*"

The heirs at law of *George Lebeau,* who are his brothers and sisters, and nephews and neices, bring this action, to set aside the will, as being invalid in law and in form. Their petition avers, that, even should the will be held to be valid in form, two of the legacies contained therein are illegal, to wit, the legacy of freedom to a slave named *Pericles,* and the legacy of one-eighth of the succession to *Elizabeth Wilson,* who was the concubine of the testator, and as such, incapable of receiving from him by a donation *mortis causâ.* The heirs also attack certain donations *inter vivos* made by the deceased to the same *Elizabeth.*

The defendants, who are the legatees mentioned in the clause of the will copied above, have excepted that the heirs at law are without interest to attack the will, because, even supposing *Elizabeth Wilson* to be incapable of receiving from the deceased, her portion in this estate will belong, by accretion, to her seven co-legatees.    This exception was maintained by the District Court, and the suit dismissed.    The plaintiffs have appealed.

The first thing which demands our attention, is a motion to dismiss the appeal, on the grounds : 1st. That the appellants, being married women, have not been authorized by their husbands to take the appeal.

2d. That certain parties interested in maintaining the judgment appealed from, have not been made parties to this appeal.

Neither of these grounds are tenable.    There are many plaintiffs, and many defendants in this suit.    Only a portion of the latter have made any appearance Those who have appeared, have pleaded, separately,  the exception abovementioned; which having been taken under advisement by the court, the parties, at the end of the term, entered into a written agreement, "that the Judge will, as soon as he has prepared his judgment on the exceptions of defendants, hand it to the Clerk of this court; that the judgment so rendered will have the same form as if rendered according to law in open court ; and that, on furnishing a bond to the amount to be fixed by the court to answer for costs, the party cast will have the right of taking the case on appeal to the Supreme Court in New Orleans, on the 4th Monday of January next, without notice and without petition of appeal, and citing the appellees." This agreement is the law of the parties who have signed it, and who are the same that move to dismiss the appeal.

It is not pretended that the appeal bond given was not in conformity to the agreement.    That bond is not signed by the married women who are mentioned

as principals, but by their attorney.   The authorization of these married women to bring the suit, is not understood as being contested; and they were clearly the party cast by the judgment appealed from.   As to the objection, that three persons named in the motion should have been made appellees, being interested in maintaining the judgment, it may be replied, that two of the three were not cited in the court below, and the third, though cited, had made no appearance, nor had any default been entered against her.   Besides which, the appeal bond is in favor of *Louis H. Trudeau* and others, legatees of *George Lebeau,* deceased," under which general designation, the whole of the parties named in the motion, might, without impropriety, be included.

Proceeding to the decision of the appeal, as well taken, we find the point upon which the plaintiffs' action has been dismissed by the court below, to be, the accretion of inheritance—a doctrine which, according to Toullier, (vol. 5, No. 683,) " passait avec raison pour la matière la plus subtile et la plus épineuse du droit romain."

The extent of this right of accretion, as it was recognized by at least a portion of the Roman jurists, was much circumscribed by the Articles 1044 and 1045 of the Code Napoleon, which are copied literally in the Articles 1700 and 1701 of the Louisiana Code.   According to the former of those articles, accretion only takes place in favor of those co-legatees who are joined by name in one and the same clause of the will, without the testator's having assigned the part or portion of each co-legatee in the thing bequeathed.   Under this legislation, a legacy of a thing, or of all the testator's estate, to several persons in equal portions, does not give rise to a right of accretion in favor of one or more of those persons, in case the rest should be incapable of inheriting.   But in the construction of the Article 1044, the French courts have made a distinction, as to whether the *assignation de part* is made by the testator in a disposing form, or in an executory form.

Thus, if the testator say, "I leave my estate to Peter, Paul and James, in equal portions," there is an *assignation de part* which precludes accretion ; but if he says, "I leave my estate to Peter, Paul and James, to be by them divided equally," there is no *assignation de part* by the testator ; this form of expression, implying that the legatees are to take the thing bequeathed in an undivided form, although it is in the contemplation of the testator, that they shall subsequently divide it equally among themselves.   This distinction appears very refined; and Marcadé, (Explication du Code Civil, Arts. 1044, 1045,) observes, thereupon, " Comment veut-on qu'un marchand, un cultivateur, et même tout homme du monde, aperçoive une différence aussi capitale entre " Je lègue mes biens à Pierre et à Paul, chacun pour moité" et " Je lègue mes biens à Pierre et à Paul, pour se les partager chacun par moitié" ?   Est-ce que cette différence, si vraie qu'elle puisse être, ne serait pas insaisissable pour les neuf dixièmes des citoyens."   In fact, the doctors of the French law are much divided upon the correctness of this distinction, sanctioned though it be by several decisions of the Court of Cassation.   In citing these conflicting opinions, Marcadé joins Coin Delisle in refusing to adopt either, absolutely ; but concludes that the intention of the testator, as to the assignment of portions in the legacy, is to be gathered from the context, as a guide for the application of the right of accretion.   The District Court, proceeding upon the rule of construction laid down by Marcadé, has found in the commencement and in the close of the will of *Lebeau,* expressions of his intention to dispose of the whole of his prop-

erty in favor of the eight persons named in the extract above quoted.  Of that intention, we think with our learned brother of the District Court, that there can be no doubt.  But the matter which we have to decide, is not the intention of bequeathing the whole of his property to particular persons, but the intention of assigning to each of those persons, a particular portion in the thing bequeathed.

The expressions of the disposing clause are, " après mes dettes payées, mon bien sera partagé par portions égales aux personnes ci-après nommées," etc.

It is very clear, from the context, that the words "mon bien" mean all the property of the testator.  This property shall be divided, says the will, in equal portions, after the payment of debts.  The assignment of the portion is here direct—it is made by the testamentary disposition.  It is not, to be sure, an assignment of so much money to one, or of such a farm to another, but it is a declaration what part each legatee shall receive, in a distribution to be made of the net estate—aux personnes ci-après nommées : not a partiton by the legatees among themselves, but an assignment of a portion to the legatees severally.

This is a very different form of expression from that which we find in the case of *Delaporte's* will, cited by Toullier, Duranton and Marcadé.  "J'institue pour mes héritiers généraux et universels le sieur *Planté* et ses deux sœurs, mes trois neveux, pour par eux jouir et disposer de mon entière hérédité, après mon décès, par portions égales, à leur volonté, en payant mes dettes."

It should be observed also, in reference to the construction of the Articles 1700 and 1701, that our Code contains two articles, which are not found in the Code Napoleon, and which immediately precede and follow those two articles.

Articles 1699 declares, that the right of accretion relative to testamentary dispositions, shall no longer subsist, except in the cases provided in the two following articles :

Article 1702 says: " Except in the cases prescribed in the two preceding articles, every portion of the succession remaining undisposed of, either because the testator has not bequeathed it, or because the heir or the legatee has not been able, or has not been willing to accept it, shall devolve upon the heirs at law."

Had these articles existed in the Code Napoleon, we are not permitted to suppose that Marcadé would have maintained, as we find him doing, in opposition to Duranton and others, that the right of accretion of legacies was not limited to the cases mentioned in Articles 1044 and 1045 of the French Code.

I think the judgment appealed from should be reversed.