WATERMAN v. CANAL-LOUISIANA BANK & TRUST CO. et al.†

(Circuit Court of Appeals, Fifth Circuit. March 14, 1911.)

No. 2,077.

**1. WILLS (§ 487*)—CONSTRUCTION—EXTRINSIC EVIDENCE.**

In the construction of a will, the court is bound to ascertain the intention of the testator from the terms used in the will, without the aid of extrinsic evidence.

[Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 1026–1032; Dec. Dig. § 487.*]

**2. WILLS (§ 777*)—CONSTRUCTION—"CONJOINT LEGACY"—LAPSED LEGACY.**

Civ. Code La. art. 1707, provides that accretion shall take place for the benefit of legatees in case a legacy is to several conjointly, and that the legacy shall be reputed to be made conjointly when it is made by one and the same disposition, without the testator having assigned the part of each co-legatee in the thing bequeathed, and article 1709 declares that except in the cases provided by such article, and by article 1708 (inapplicable), every portion of the succession remaining undisposed of shall devolve on the testator's legitimate heirs. Testator bequeathed pecuniary legacies to a number of legatees, and then bequeathed different amounts to six charitable institutions, among which was a bequest to the "Home for Insane," and then provided that the residue should be divided between the beneficiaries of the charitable bequests pro rata in proportion to the amount of the special legacies made to them. *Held*, that the residuary bequest was conjoint within article 1707, so that, on the failure of the legacy to the Home for Insane because of uncertainty, such legacy, together with the legatee's interest in the residue, passed to the other charitable legatees, and not to testatrix's heirs at law.

[Ed. Note.—For other cases, see Wills, Dec. Dig. § 777.*]

**3. COURTS (§ 366*)—FEDERAL COURTS—STATE STATUTES—CONSTRUCTION—DECISIONS OF STATE COURT.**

The construction of articles of the Louisiana Civil Code by the Supreme Court of that state is controlling on the federal courts, and becomes in effect a part of the statute.

[Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 954–957, 960–968; Dec. Dig. § 366.*

Conclusiveness of judgment between federal and state courts, see notes to Kansas City, Ft. S. & M. R. Co. v. Morgan, 21 C. C. A. 478; Union & Planters' Bank v. City of Memphis, 49 C. C. A. 468.]

Appeal from the Circuit Court of the United States for the Eastern District of Louisiana.

Bill by Frances E. Waterman against the Canal-Louisiana Bank & Trust Company, as executor of the estate of Caroline Stannard Tilton, deceased, and others, to construe the will. From an adverse decree, complainant appeals. Affirmed.

This is a bill by Frances E. Waterman, wife of Charles A. Crane, a citizen of Illinois, against the Canal-Louisiana Bank & Trust Company, executor of the will of Caroline Stannard Tilton, deceased, and others, all citizens of Louisiana. The complainant sues as an heir at law of the testatrix. The suit involves the construction of Mrs. Tilton's will. Omitting the codicils, which are sufficiently described in the opinion, the will is as follows:

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

† Rehearing denied April 13, 1911.

"So help me God, Amen.       "New Orleans, January 1st, 1908.

"I, Caroline Stannard Tilton, being of sound mind and good bodily health, do by these presents make and publish this my last will and testament, revoking all others.

| | |
|---|---|
| To my nephews, Robert and Frederick Waterman, each | $3,000 00 |
| To my nephew, Frederick Tilton Davis | 1,000 00 |
| To the four children of Mrs. Charles Crane of Chicago, Illinois, each | 1,000 00 |
| To my god-child, Ethelyn Lallande | 1,000 00 |
| To my cousin, Nina Kirby-Smith Buck, of Indianapolis | 3,000 00 |
| To the two children of my nephew, Edward N. Waterman, each | 1,000 00 |
| To my friend, Mrs. Charles Conrad, of New Orleans | 3,000 00 |
| To my friend, Charles Conrad Krumbhaar | 1,000 00 |
| To my friend, Gustave T. Beauregard's Memorial Statue | 1,000 00 |
| To my niece, Mamie Anderson Willard | 5,000 00 |
| To my friend, Juanita Lallande | 1,000 00 |
| To my friend, Pauline Toby | 1,000 00 |
| To my cousin, Virginia Kirby-Smith, of Mexico | 3,000 00 |
| To my god-child, Caroline Tilton Kirby-Smith, of Mexico | 1,000 00 |
| To my god-child, Frances Kirby-Smith Wade, of Los Angeles | 1,000 00 |
| To my friend, Mrs. Alphonse Le Doux | 1,000 00 |
| To my friend, Mrs. Annie Bousin, of Paris, France | 3,000 00 |
| To my cousin, David Barcley Kirby, of New York | 3,000 00 |
| To my grand-nephew, Frederick Tilton Willard | 3,000 00 |

which I wish my executors to invest in some desirable security, to be registered in his name, to be used to defray his expenses of tuition to prepare him for the scholarship at the Tulane University, which his father, Charles Willard, holds for him, and which was presented to him for said Tilton Willard, by the administrators of Tulane University.

| | |
|---|---|
| To my cousin, Carry Kirby-Smith, formerly of Sewanee, I give | 1,000 00 |

I give and bequeath to the Board of Commissioners of Audubon

| | |
|---|---|
| Park, of New Orleans, the sum of | 3,000 00 |

to be expended by them in beautifying that portion of the Park that fronts upon the property of the Tulane University.

| | |
|---|---|
| To the memorial to be erected to Gen. Beauregard | 1,000 00 |
| To the Charity Hospital of New Orleans | 2,000 00 |
| To the St. Anna's Asylum | 2,000 00 |
| To the Protestant Episcopal Orphan Asylum, Jackson Ave., N. O. | 2,000 00 |
| To the Home for Incurables | 2,000 00 |
| To the Home for Insane | 3,000 00 |
| To the Christian Woman's Exchange | 1,000 00 |

"After satisfaction of all the foregoing special legacies and bequests, and after payment of all costs and expenses in settlement of my estate, if I have remaining any besides undisposed of, I will and direct that such residue shall be divided between the beneficiaries of the charitable bequests heretofore made to various institutions; the division to be made pro rata, and in proportion to the amount of the special legacies already made them respectively.

"Should any of the beneficiaries under the will object to the probate thereof, or in any way directly or indirectly contest, or aid in contesting the same, or any of the provisions thereof, or distribution of my estate thereunder, then and in that event, I annul any bequest heretofore made to such beneficiary, who shall be absolutely barred and cut off from any share in my estate.

"I hereby appoint and designate the Canal-Louisiana Bank & Trust Company as my executors, with full seizin to carry out my wishes.

"I have no heirs, neither as ascendant or descendant.

"Signed this day of our Lord, January 1st, 1908.

                                        "Caroline Stannard Tilton.
                                        "New Orleans, La."

It is alleged in the bill that Mrs. Tilton failed to identify with any degree of certainty which "Home for Insane" she intended as the object of her bounty, and to whom she specially bequeathed the $3,000, together with the pro rata part of the residue. It is therefore averred that this legacy of $3,000 and the part of the residue bequeathed to the "Home for Insane" became caducous and lapsed because of the inability of the legatee to take. It is averred that such proportionate share in the residue, together with the special legacy, bequeathed to the "Home for Insane," exceeds the sum of $90,000.

There was a demurrer to the bill for want of jurisdiction in the Circuit Court, but that question was finally settled in favor of the jurisdiction by the Supreme Court. Waterman v. Canal-Louisiana Bank & Trust Co., 215 U. S. 33, 30 Sup. Ct. 10, 54 L. Ed. 80. After the question of jurisdiction was decided, the case was tried in the Circuit Court on the following ground of demurrer:

"That the said bill is without equity because it appears on the face of the will annexed to said bill that the legacy to the Charity Hospital, the St. Anna's Asylum, the Protestant Episcopal Orphan Asylum, the Home for Incurables, the Home for Insane, and the Christian Woman's Exchange is a conjoint universal legacy, and if the legacies to the Home for Insane have lapsed, as averred, the same belong to the other conjoint universal legatees."

The Circuit Court sustained the demurrer and dismissed the bill. The complainant appealed, and assigns the decree dismissing the bill as error.

E. Howard McCaleb, for appellant.

Geo. H. Terriberry, H. G. Dupre, Geo. C. Walshe, Chas. E. Fenner, Edgar H. Farrar, H. G. Dufour, Wm. C. Dufour, Victor Leovy, Walter Guion, S. McC. Lawrason, and J. McConnell, for appellees.

Before PARDEE, McCORMICK, and SHELBY, Circuit Judges.

SHELBY, Circuit Judge (after stating the facts as above). The bill alleges, and the demurrer admits, the caducity of the legacy to the "Home for Insane." The lapsed legacy is the subject of controversy. The question to be decided is whether it devolves upon Mrs. Tilton's heirs at law, or whether accretion takes place for the benefit of her colegatees. The answer must be found in the language of the will and in the local law.

[1] In the construction of wills, the rule everywhere controls that the courts must ascertain, if they can, and enforce, the intention of the testator. "The intention is the polar star by which the courts must be guided." This rule is recognized alike by the common law (Finlay v. King, 3 Pet. 346, 7 L. Ed. 701) and, with emphasis, in jurisdictions where the civil law prevails (City v. Hardie, 43 La. Ann. 251, 9 South. 12). But with exceptions with which we have no concern in this case extrinsic evidence would not be considered, for the will must speak for itself. Mackie v. Story, 93 U. S. 589, 23 L. Ed. 986. The rule, to seek the intention but to hold to the words, is found in the statute:

"In the interpretation of acts of last will, the intention of the testator must principally be endeavored to be ascertained, without departing, however, from the proper signification of the terms of the testament." Louisiana Civ. Code, art. 1712.

The court should examine and consider the whole instrument in search of the intention. While there should be no departure from the proper signification of the terms of the part construed, other parts,

in fact, the whole scheme, may shed light on the intention. When the part to be construed is susceptible to two constructions producing radically different results, the courts naturally and properly adopt the one which conforms to the intention shown by the whole will. This search for intention is found in the opinions of the Louisiana Supreme Court in the cases construing wills like the one we are considering, and in applying the articles of the Civil Code that are to be. applied here. In Parkinson v. McDonough, 4 Martin (N. S. La.) 246, the court said:

"In cases of doubtful or equivocal expressions in testaments, when disputes arise on matters to which they relate, it is a primary duty of courts of justice to ascertain with all possible precision the intention of the testator, and, if it be consistent with law, to give it effect. * * *
"If the interpretation contended for by the appellants be tolerated by law, it will afford the means of giving effect to the intention of the testator in the present case."

And in Lebeau v. Trudeau, 10 La. Ann. 164, 165, the court said:

"To say that by the failure of the legacy as to any one of these eight beneficiaries thus jointly constituted his universal legatees any other person than they should profit is to fly in the face of the testator's clear and unequivocal intention, and surely such a result should not be permitted, unless there be some insuperable provision of law to override that intention."

If there should be doubt of the proper construction of the words and phrases of the parts of Mrs. Tilton's will upon which this suit depends, it is clear that we would be following precedent to ascertain, if we can, her intention from the whole will, and to give the controverted part, if it is susceptible to it, such construction as will comply with that intention, and to avoid, unless driven to it by the plain words of the controlling part, such construction as would defeat that intention.

Before making a close scrutiny of the portion of the will which is controlling, it is well to take a general view of the whole instrument. That course may aid in arriving at a proper construction of the parts in question. The will indicates that the testatrix owned a large estate, and asserts that she had no heirs ascendant or descendant. Her next of kin entitled to inherit her estate, had she died intestate, were nephews and nieces. The first 20 items are gifts to nephews, nieces, cousins, a godchild, and friends, each gift being a fixed sum of from $1,000 to $5,000. The next two items are a gift of $3,000, to be used in beautifying the park that fronts upon the property of the Tulane University, and $1,000 to the memorial to be erected to Gen. Beauregard. Passing for the present six gifts to charities of from $1,000 to $3,000 each, and the residuary clause on which the controversy centers, we look at the three codicils to the will, and find that they contain gifts of described articles to kindred and friends, and specified sums of from $50 to $200 to named servants, and a gift of $20,-000 to be used in building a Protestant Episcopal church. And the Canal-Louisiana Bank & Trust Company is made executor, "with full seizin to carry out" her wishes.

We copy below the six charitable bequests and the residuary clause on which the controversy mainly depends:

| | |
|---|---|
| To the Charity Hospital of New Orleans | $2,000 00 |
| To the St. Anna's Asylum | 2,000 00 |
| To the Protestant Episcopal Orphan Asylum, Jackson Ave., N. O. | 2,000 00 |
| To the Home for Incurables | 2,000 00 |
| To the Home for Insane | 3,000 00 |
| To the Christian Woman's Exchange | 1,000 00 |

"After satisfaction of all the foregoing special legacies and bequests, and after payment of all costs and expenses in settlement of my estate, if I have remaining any besides undisposed of, I will and direct that such residue shall be divided between the beneficiaries of the charitable bequests heretofore made to various institutions; the division to be made pro rata, and in proportion to the amount of the special legacies already made them respectively."

Excepting the residuary clause, each legacy is of a specified article or a specified sum. Legacies of $1,000 each are left to the complainant's four children; and in one of the codicils a small gift is made to the complainant. In every gift of money the sums are fixed, and there is nothing to indicate an intention to increase the sums under any circumstances. It seems to have been her plain intention to be more liberal in her donations to the church and the charities than to her kindred and friends, the other legatees, for the gifts to the former are larger. And the will limits and fixes the maximum amount that each legatee is to receive, except the beneficiaries of the six charitable bequests, who are to receive fixed sums, and also the residue. It may be said that the will shows a scheme to dispose of the whole estate, to give fixed sums and specified articles to named kindred and friends, and larger fixed sums to public institutions, and specified sums to six named charitable institutions, which are also to receive any residue of the estate that may remain.

A decree granting the relief prayed for would clearly be in conflict with this general scheme and the intention shown by it. But it is true that most weight must be given to the words of the clause making the bequest in question.

[2] The residuary clause which we have copied above embraces the entire residue of the estate after the payment of the special legacies, and, if the six beneficiaries of the charitable bequests were able and willing to take the bequests of such residue, there would be no ground for this litigation. The clause clearly disposes of the entire residue. But the bill alleges, and the demurrer admits, that there is no such institution or corporation in existence as the "Home for Insane," and that, therefore, the legacy of $3,000 to said "Home for Insane" and the pro rata of the residue, estimated at $90,000, have lapsed, the said legatee being nonexistent and incapable of receiving the legacy. Civ. Code La. art. 1703. The contention of the complainant is that this lapsed legacy devolves upon the legitimate heirs of the decedent. The defendants contend that, assuming it to be true that the legacy has lapsed, accretion takes place for the benefit of the five other charitable institutions which are referred to in the residuary clause. The following are the articles of the Civil Code which are controlling:

"Art. 1707. Accretion to Legatees in Conjoint Legacy—Accretion shall take place for the benefit of the legatees, in case of the legacy being made to several *conjointly.*

"The legacy shall be reputed to be made conjointly when it is made by one and the same disposition without the testator's having assigned the part of such colegatee in the thing bequeathed."

"Art. 1708. Id. Conjoint Legacy.—It shall also be reputed to be made conjointly when a thing, not susceptible of being divided without deterioration, has been given by the same act to several persons, even separately.

"Art. 1709. Accretion to Heirs.—Except in the cases prescribed in the two preceding articles, every portion of the succession remaining undisposed of, either because the testator has not bequeathed either to a legatee or to an instituted heir, or because the heir or the legatee has not been able, or has not been willing to accept it, shall devolve upon the legitimate heirs."

The gist of the residuary bequest is in these words:

"I will and direct that such residue shall be divided between the beneficiaries of the charitable bequests heretofore made to various institutions; the division to be made pro rata, and in proportion to the amount of the special legacies already made them respectively."

If the legacy created by these words is *conjoint*, then the complainant has no rights, for, under article 1707, accretion takes place for the benefit of the other legatees—the five other beneficiaries of the charitable bequest. But, if it is not a case of a legacy being made to several *conjointly*, it would then be governed by article 1709, and the lapsed legacy would devolve upon Mrs. Tilton's heirs. Article 1708, relating to a thing not susceptible of being divided, is not applicable, and will need no further consideration. Unless, therefore, the legacy created by the residuary clause is conjoint, within the meaning of article 1707, accretion does not occur, and the right of the complainant would accrue under article 1709. Two questions are suggested by the language of the former article: (1) Is the legacy made by one and the same disposition; and (2) is it made without the testatrix having assigned the part of each colegatee in the bequest.

Looking at the language of the residuary clause, not for the purpose of solving questions of syntax or parsing, but solely to get the meaning of the clause, we find a single gift of the residue of the estate to six previously named charitable institutions. The residue is bequeathed as an entirety. It is not a bequest of two-twelfths to one legatee and three-twelfths to another, and so on, separately. All the named legatees are called to partake, in proportions ascertainable by the will, of the whole residue. As to such residue they are made universal legatees. A legacy of the residue is held to be a universal legacy. Succession of Burnside, 35 La. Ann. 708; Compton v. Prescott, 12 Rob. (La.) 56, 66. Accretion is founded on the theory that the bequest is given in its entirety to every one of the named legatees, and hence, when one of the legatees is unable to take, this fact leaves the title to the whole intact in the others. Succession of Hunter, 45 La. Ann. 262, 266, 12 South. 312. Here, as we have said, the bequest is of the entire residue to the named legatees. We also find a direction for a pro rata division of such residue among such named institutions in proportion to the amount of the special legacies already made to them. But that does not prevent the bequest from being conjoint.

In Parkinson v. McDonough, 4 Martin (N. S. La.) 246, decided in 1826, the court construed the articles we have quoted. The bequest was in these words:

"I will and bequeath to the orphan children of my old friend Godfrey Duher, and which are now under my charge, and are named Mary, Nancy, James and Eliza, one share, or one-eighth part of all my property, to be equally divided among them."

In that case, taking the clause as a whole, we find a bequest of one-eighth part of the testator's estate to four persons, to be equally divided among them. In the case at bar, the bequest is of the residue, with direction to divide, not equally, but pro rata. In the Parkinson Case, the court held that the legacy was conjoint, and, one of the co-legatees having died, it was held that accretion took place in favor of the other colegatees. The court said:

"The testator in the present case bequeaths to four persons one-eighth part of his estate, to be divided equally among them. Is this a legacy made without assigning to each colegatee his part in the thing bequeathed? The thing bequeathed is one-eighth part of the testator's succession, which he gives to be equally divided between four persons, to whom the bequest is made conjointly, according to the first member of the sentence; but, according to the second, they are to partake of it in equal portions. * * *

"The distinction between a bequest of a thing to many in equal portions, and one wherein a testator gives a legacy to two or more individuals, to be divided in equal portions, appears at first view extremely subtle and refined. The difference in phraseology in those two modes of bequeathing is so slight as not readily to convey to the mind any difference in ideas, and can only produce this effect by separating the members of the sentence in the latter phrase; in truth, to create two distinct sentences, each complete in itself with regard to sense and meaning; the one relating to the disposition of the will, the other to its execution. We might hesitate much in adopting this method of construction, were it not sanctioned by the authorities cited in behalf of the appellants. The doctrine contended for is fully supported by the Commentary of Toullier on the 1044th article of Code Napoléon, which we have already shown to be precisely similar to that of our own Code on the same subject."

In Lebeau v. Trudeau, 10 La. Ann. 164, decided in 1855, the bequest was as follows:

"After my debts are paid, my property shall be divided, in equal portions, among the persons hereinafter named, that is to say, [here follow the names of the eight legatees]. I have hereinbefore mentioned the names of the persons to whom I bequeath all my property."

One of the eight legatees having died, in holding that accretion in favor of the other legatees took place, the court said:

"Now, here, the legacy is made by one and the same disposition. Is it made without the testator's having assigned the part of each colegatee in the thing bequeathed? I think it is.

" 'The assigning of the parts of each colegatee,' means something more than is comprehended in the language of this will, which, according to my understanding of it, simply directs their participation of his whole estate in equal portions. I apprehend the terms used in the Code contemplate an express specification and assignment of the respective portions of the legatees, calling each to his particular part. But in the present case there is not that specific and distinct assignment of the parts, which, in my judgment, is necessary to constitute a distinct legacy to each of a distinct portion of the deceased's fortune. He appears to me, on the contrary, to have called them conjointly to partake equally in the totality of his estate, and has mentioned the equality of their portions for the purpose of regulating the distribution of that totality."

In Mackie v. Story, 93 U. S. 589, 23 L. Ed. 986, decided in 1876, the court had before it for construction the same articles of the Civil Code. In that case the words of the will were:

"I will and bequeath to Henry C. Story and Benjamin S. Story all properties I die possessed of, to be divided equally between them."

The court quoted the Parkinson and the Lebeau Cases, and held, one of the legatees having died before the testator, that accretion took place, and that the surviving legatee, and not the heirs at law, took the whole of the estate bequeathed. The court pointed out that the article of the Louisiana Civil Code in question exactly followed the Code Napoléon, and that a bequest in similar words had been held to be a conjoint legacy, under the French Code, as construed by the Court of Cassation. This case—Mackie v. Story—is cited approvingly, not on this point, however, by the Louisiana Supreme Court in 1907. Succession of Quinlan, 118 La. 602, 605, 43 South. 249.

If the legacy is conjoint in the Parkinson Case, the Lebeau Case, and the Mackie Case, we can see no reason why it is not to be held conjoint in the case at bar. In the first case, there was a bequest to four named persons, to be equally divided among them; in the second case there was a bequest that "my property shall be divided in equal portions" among eight named persons; and in the third case there was a bequest of all the testator's property to two persons, to be equally divided between them. In each case the bequest shows the part of the legacy that is to be received by each person named, but still it was held to be conjoint. In the case at bar the bequest of the residue is to six named beneficiaries. The gift embraces the entire residue—whatever is left after paying the special legacies. It could not be known exactly what sum would be left, but whatever is left is bequeathed. If there had been a direction for "equal division" among the six named beneficiaries, there would have been more similarity in words in this case to the other cases. The direction here is for a pro rata division based on the previously described legacies, which clearly fixes, not the amount to be received by each institution, but the proportion that each was to receive. There is no difference in principle, whether the share is fixed at one-half, one-fourth, one-eighth, or three-twelfths, or at any proportion ascertainable from the words of the bequest.

[3] The construction which the Supreme Court of Louisiana has placed on these articles of the Civil Code should be controlling in the federal courts. Such construction becomes, in effect, a part of the statute, to be enforced by this court as it would be enforced by the Louisiana courts had the complainant selected that forum. We have been governed by the Louisiana law alone in reaching our conclusion. It is interesting to note, however, that at common law, construing the residuary bequest as one to the several charitable institutions *as a class,* the inability of one of them to take would leave the entire legacy to be divided among the others. Note, 94 Am. Dec. 156, 157, quoting 2 Redfield on Wills, 168, and other authorities.

We find nothing in the opinion in Succession of Hunter, supra, that conflicts with the cases that we have cited as controlling. On the contrary, that opinion shows that the construction placed on Hunter's will

relieved the court from considering the pivotal question in this case.

We are of opinion that the court ruled correctly in holding that the legacy was conjoint.

Affirmed.