426 So.2d 1377 (1983)
Wilma Lee HOPSON, Testamentary Executrix of the Succession of Clara Farquhar Heins, Plaintiff-Appellant,
v.
Helen Farquhar RATLIFF, et al., Defendants-Appellees.
No. 82-564.
Court of Appeal of Louisiana, Third Circuit.
February 3, 1983.
*1378 Jones, Tete, Nolan, Hanchey, Swift & Spears, Carl H. Hanchey, Lake Charles, for plaintiff-appellant.
Cox, Cox & Townsley, James J. Cox, Scofield, Bergstedt, Gerard, Mount Vernon, Thomas W. Bergstedt, Lake Charles, for defendants-appellees.
Before DOMENGEAUX, FORET and DOUCET, JJ.
DOUCET, Judge.
Petitioners herein appeal the district judge's interpretation of an olographic will whereby lapsed particular and residual legacies were granted to respondents, legal heirs of legatee who predeceased the testatrix, rather than the named surviving legatees. We affirm.
The issues presented on appeal are: (1) whether the residuary clause of decedent's will was distributive rather than conjoint, thereby precluding accretion in favor of the surviving legatees; and (2) whether property subject to a particular legacy should devolve upon the heirs at law rather than fall into the residuum of the estate for distribution to the surviving residuary legatee.
We have carefully scrutinized the record in this case and have concluded that it contains no grounds for reversal or modification. That the learned trial judge accurately assessed the facts is undisputed and we concur in his legal analysis thereof. Inasmuch as excellent written reasons for judgment were assigned by the trial court, we hereby adopt the following as our own:
"This is a suit for a declaratory judgment to interpret the olographic will of Clara F. Heins.
"The contest is between the testamentary heirs and the legal heirs.
"The deceased had no forced heirs. At the time she made her will, her kin consisted of a sister, Katherine F. Maxfield, four nieces, Helen F. Ratliff, Lucille F. Kincannon, Elaine F. Valentine and Wilma Lee Hopson, and one grand-niece, Marianne Bell Tweel. At the time of her death her sister, Katherine F. Maxfield, was predeceased.
"In her will, deceased provided for her sister and three of her nieces. She made no mention of her fourth niece, Helen F. Ratliff,[1] or her grand-niece, Marianne Bell Tweel.
"The dispute is over what happens to the lapsed bequests to the testatrix' sister. Does this property go to the surviving legatees, exclusively, or do the two legal heirs unnamed in the will get a share?
"The will itself made a specific bequest to each of the four legatees, and then left the remainder to the same four, `To be divided equally among them'. The legacies which created this dispute, caused by the lapse of legacies to the predeceased sister, are here recited:
"`To my sister Katherine F. Maxfield, I bequeath the lot adjoining her house and all of my interest in Katherine Heights # 1 and # 2 including the duplex and all of my government bonds.

*1379 "`To my sister Katherine F. Maxfield, and to my three nieces, Wilma Lee Hopson, Lucille Kincannon, and Elaine ValentineI give, devise and bequeath all of my propertyreal, personal (jewelry) and mixed, of which I possess or to which I am entitled at the time of my death; including such stocks, bonds, mortgages, bank deposits, building loan savings, cash and bank savings (with the exception of separate bequeaths which I have listed). And all of my interest in my inherited properties (with the exception of separate bequeaths.) To be divided equally among them.'
"The legacy to Katherine F. Maxfield of `the lot adjoining her house and all of my interest in Katherine Heights # 1 and # 2 including the duplex and all of my government bonds' is a particular legacy. La.Civ.Code Art. 1625.
"The other legacy which is a legacy of the residuum, `To my sister Katherine F. Maxfield and to my three nieces ... I give ... all ... (with the exception of separate bequeaths). To be divided equally among them', is either a universal legacy or a legacy under a universal title. Arts. 1606 and 1612. What it is depends on whether this was a conjoint or a distributive legacy.
"Whether the legacy of the residuum is conjoint or distributive determines whether or not the right of accretion subsists, as provided by Arts. 1706 and 1707.
"Of these issues, we will first determine whether the residuum was conjoint or distributive.
"Art. 1707 defines a conjoint legacy:
"`The legacy shall be reputed to be made conjointly when it is made by one and the same disposition without the testator's having assigned the part of such co-legatee in the thing bequeathed.'
"The testatrix here used the language `To be equally divided among them'. These were the identical words of the will in the case of Parkinson v. McDonough, 4 Mart., N.S. 246 (La.1826). The court in that case said that was a conjoint legacy. In LeBeau v. Trudeau, 1855, 10 La.Ann. 164, similar language: `Shall be divided, in equal portions, among the persons hereinafter named', was held to constitute the beneficiaries conjoint universal legatees. Succession of Wilcox, 165 La. 803, 116 So. 192 (1928), and Succession of Maus, 177 La. 822, 149 So. 466 (1933) picked up on Parkinson and LeBeau and held that the words `share and share alike' imported conjointness.
"Then things changed. Succession of Lambert, 210 La. 636, 28 So.2d 1 (1946), dealing with language `share and share alike' overruled Wilcox and Maus, saying that the phrase `share and share alike' is distributive, not conjoint, pretty much as a matter of law. Lambert emphasized that its result comported with the testator's clear intent. Lambert quietly apologized for the earlier cases by explaining that all of them were simply striving to carry out the clear intent of the testator.
"Next came Succession of McCarron, 247 La. 419, 172 So.2d 63 (1965). The Supreme Court said:
"`If we are correct in our appreciation of Parkinson v. McDonough and LeBeau v. Trudeau, both supra, which is that they simply held that the language "to be divided" may, in some cases, be interpreted as relating to the future disposition, and not to the bequest itself, when such an interpretation will effectuate the obvious intention of the testator (as expressed elsewhere in the will that the co-legatees should benefit by any lapse as to the part of one), then those holdings need not be disturbed. Because a giving effect to the true intention of the testator has always been of paramount concern to this court in construing testaments ...
"`But if the discussed early decisions mean that, in the absence of any showing of intent, the phrase "to be divided equally" does not constitute an assignment of parts, and differs from the phrases "in equal portions" and "share and share alike", then we do not choose to follow them. We consider a distinction of that kind, as a hard and fast rule of testamentary construction, is entirely too `subtle and refined' to stand as the basis for the *1380 interpretation of wills which in many, if not most, cases are composed by persons of ordinary understanding and not by judicial writers.'
"Thus, the state of the law appears to be that the phrase `share and share alike' is incapable of creating a conjoint legacy, while the phrase `to be equally divided among them' may, under some circumstances, be conjoint, but only if such interpretation will effectuate the obvious intention of the testator.
"On the question of intent, counsel have presented the court with excellent arguments. Counsel for the heirs say the intent sought is the narrow one of whether the testatrix wanted to distribute the residuum of her estate conjointly among the named legatees, or distribute it equally among the named legatees. The argument of the legatees, on the other hand, is that the intent element we are trying to determine is the underlying question of where the testatrix wanted her property to go. I have concluded that the latter is the intent we are trying to determine.
"The Code article which instructs us on this subject is Art. 1712:
"`In the interpretation of acts of last will, the intention of the testator must principally be endeavored to be ascertained, without departing, however, from the proper signification of the terms of the testament.'
"Helen Farquhar Ratliff and Marianne Bell Tweel were the only two of deceased's kin that she did not provide for in her will. These two were descendants of one of the testatrix' brothers, Benjamin H. Farquhar. Their absence from the will surely was not an oversight. Deceased made particular legacies to her sister and three nieces and then named the same four as her residuary legatees. Since she named each of those four legatees twice, and failed to make any provision for the other two persons, it is arguable that she wanted to exclude Helen Farquhar Ratliff and Marianne Bell Tweel from sharing in her estate. Viewed this way, one may be inclined to interpret her language as creating a conjoint legacy, because only by such an interpretation can the intent of the testatrix to exclude the (arguably) unfavored heirs be carried out.
"But was it her intent to exclude the two unnamed heirs absolutely? She does not say so in the will. Also, we can only guess what she would have done had she known at the time of the making of the will that her sister would predecease her. All we know for certain, based on the will itself, is that her intent when her sister Katherine was alive was to leave everything to her sister Katherine and her then three favored nieces. It is quite possible that had she anticipated her sister's predecease, she might have provided for her other niece and her grandniece.
"For these reasons, I cannot say that it was the `obvious intention' of the testatrix to exclude the other two nieces from sharing in her estate. Only by finding that it was her obvious intention can the court be justified in interpreting the words `to be shared equally among them' to be a conjoint legacy. To paraphrase from an ancient case, quod voluit must depend ultimately on quod dixit. I conclude that the legacy was distributive, and the remaining legatees do not benefit from the lapse of Katherine's share of the residuary legacy.
"This disposes of how the residuum will devolve. There remains, however, the question of what happens to the lapsed particular legacy to Katherine Maxfield. The legatees argue that if they do not hold the residuum conjointly, they are legatees under universal title and should therefore get the lapsed particular legacy. They base this contention on La.Civil Code Art. 1704:
"`Legatees under a universal title, and legatees under a particular title, benefit by the failure of those particular legacies which they are bound to discharge.'
"The universal legatee always benefits by the failure of particular legacies. Article 1704 makes provision for legatees under a universal title and legatees under a particular title to benefit also, but only under the limited circumstance where there is a failed particular legacy which they are *1381 bound to discharge. Therefore the critical language to this article's application is the phrase `bound to discharge'.
"On this subject, Compton v. Prescott, 12 Rob. 56 (La.1845), says the residuary legatees under a universal title have no right to the whole succession and are not seized, of right, to its effects;
"`... they are bound to demand the delivery of their portion from the heirs, ... or from the executors, ...
. . . . .
"`They are not bound by the will to discharge any particular legacies; (art. 1697;) they are to take what may remain; the execution of the will is devolved upon the testamentary executors therein named ...'
"See also Succession of Dougart, 30 La.Ann. 268 (1878), by which we are taught that for one legacy to be a charge upon another, it arises either because the testament says so, or a rule of law says so.
"In the instant will the testatrix did not bind the residuary legatees to discharge the particular legacy to Katherine Maxfield. Not being universal legatees they were not bound to do so. Instead, executors were appointed by the testatrix to discharge the particular legacies. Therefore, this legacy was not one the residuary legatees were bound to discharge, and it does not accrete to them."
The same arguments are advanced by petitioners on appeal. Appellants seek to distinguish Succession of McCarron, supra, relied upon in part by the trial judge, in that there appeared to be no intent on the part of the testatrix McCarron to preclude the children of either of her brothers in the event that one predeceased her whereas, in the instant case, only one of the testatrix's siblings (Katherine Maxfield) was living at the time the will was written and only the descendants of Benjamin H. Farquhar were not mentioned in the will. Such a distinction, appellants contend, should be made so as to lead to the legally favored interpretation effecting testacy, not intestacy. We disagree, finding McCarron to be controlling. Although decedent made no mention of respondents, she made no express provision for allocation of her wealth should any of the named legatees predecease her. There is no provision that a co-legatee should benefit by any lapse as to the part of one. In the absence of clear intent, how the decedent would have wanted her estate distributed under the circumstances is merely speculation. Inasmuch as the bequest was not made conjointly, no accretion takes place in favor of the surviving legatees. LSA-C.C. Art. 1706.
Furthermore, we agree with the trial judge that the residuary legacy is not a universal legacy, therefore the lapsed particular legacy devolves upon the decedent's legal heirs according to the rules of intestate successions. We consider In the Matter of the Succession of Moore, 353 So.2d 353 (La.App. 1st Cir.1977) writ denied, 354 So.2d 1382 (La.1978), to be inapposite inasmuch as the opinion does not disclose whether there were universal legatees.
In conclusion, appellants obviously would prefer a construction of the will granting them the whole of decedent's estate, thereby precluding respondents from sharing in her wealth. However, the testatrix's intention with regard to lapsed legacies is not clear, thus the trial judge properly declared such property distributed according to the rules of intestate successions. Moreover, such a result is consistent with the codal rule that when a will is capable of being construed so as to grant differing amounts, the interpretation giving the lesser sum is adopted. LSA-C.C. Art. 1717, Sidney v. Frosch, 413 So.2d 966 (La.App. 3rd Cir. 1982).
For the reasons set forth hereinabove, the judgment of the trial court is affirmed at appellant's cost.
AFFIRMED.
NOTES
[1] Since this case was argued, Mrs. Ratliff died. David W. Ratliff as ancillary testamentary executor of the Succession of Helen F. Ratliff has been properly substituted in her stead by order of this court signed February 1, 1983.