The judgment appealed from is therefore affirmed.

O'NIELL, C. J., dissents.

### (108 So. 319)

### No. 27247.

### Succession of ROUQUETTE.

(March 29, 1926. Rehearing Denied May 3, 1926.)

*(Syllabus by Editorial Staff.)*

1. Wills ⬤⟿55(7).

Evidence *held* not to establish mental incapacity of aged and feeble testatrix.

2. Wills ⬤⟿439.

Purpose of court in construing will is to ascertain true intent of testatrix.

3. Wills ⬤⟿147—That testatrix, knowing how to sign her name, affixed her mark to nuncupative will, held not to invalidate it, where, due to physical disabilities, she was unable to sign her name (Civ. Code, arts. 1579, 1582).

That testatrix, knowing how to sign her own name, affixed her mark to nuncupative will, *held* not to invalidate will, in view of Civ. Code, arts. 1579 and 1582, where due to physical disabilities she was unable to hold a pen long enough to write her name.

4. Wills ⬤⟿144—Witness held qualified to sign nuncupative will as resident of place where will was executed, where he had no home other than that of his mother, who resided at place of execution.

Witness *held* qualified to sign nuncupative will as resident of place where will was executed, where he was out of work and at home when he witnessed will, and had no other home than

that of his mother, who resided in place where will was executed.

5. Wills ⬤⟿144—Witness held resident of place where nuncupative will was executed, where he had his home there, though he registered as voter in another city and stated in his will that he was a resident thereof (Civ. Code, arts. 38, 1581).

Residence of witness *held* to be at place where nuncupative will was executed within Civ. Code, arts. 38, 1581, where he had built his home at such place and spent practically every night there, returning to New Orleans each day to look after his business interests, notwithstanding that he registered as a voter and stated in his will that he was a resident of that city.

Appeal from Twenty-Second Judicial District Court, Parish of St. Tammany; Prentiss B. Carter, Judge.

Succession of Augustine Rouquette. Suit by Jules Rouquette to annul the will of Augustine Rouquette, deceased. From a judgment sustaining the will, contestant appeals. Affirmed.

Hiddleston Kenner, of New Orleans, for appellant.

Lewis L. Morgan, of New Orleans, for appellee Olevia Cousin.

THOMPSON, J. Augustine Rouquette, 82 years old and unmarried, died December 29, 1922. She was survived by only one blood relation; that one being a first cousin.

Some two months prior to her death, Miss Rouquette made a nuncupative will by private act, in which she bequeathed all of her property to one Olevia Cousin, naming her as executrix with seizin and without bond.

The will was duly probated, ordered executed, and the universal legatee was sent into possession of all the property of the deceased.

Thereafter Jules Rouquette brought suit to annul the will and the probate thereof, and prayed for judgment recognizing him as the sole surviving heir of the deceased, and entitled to all of the property left by her.

The nullities propounded against the will relate both to substance and to form.

It is alleged that the testatrix did not dictate the said will, nor did she present the said will to the witnesses as being her last will; that the said will was not written from dictation, and the testatrix did not inform the writer of the will what dispositions she desired to make of her property; that the will is signed with a cross mark, whereas the deceased well knew how to sign her name in full by writing same with her own hand; that on the day the will purports to have been executed the testatrix was suffering from extreme mental and physical weakness due to old age and senility; that her mind was bordering upon idiocy and childishness, and she was unable to comprehend or understand anything relating to her business affairs, and was in no condition of mind and body to intelligently dispose of her estate or to dictate how the same should be done; that the persons who signed their names as witnesses to said alleged will, or some of them, did not possess the qualifications required by law, did not attend to what was being done, and did not understand its purport.

The district judge, after hearing the evidence, sustained the validity of the will and rejected the demand to have it annulled.

[1] The record discloses, indeed the fact can scarcely be disputed, that the testatrix at the time of making her will and for some time prior thereto was very feeble both in body and mind, due to her advanced age, but it is not a fact, and no one has pretended to testify, that the old lady was insane at any time, or that her mind was ever in such a deranged condition that she did not know and did not fully comprehend what she was doing.

Dr. Paine, the only physician who testified in the case, said that he was called to see the deceased a month or two before her death, and he found her suffering with senile disability or extreme old age, and that she was very feeble, and that her mental condition was feeble, but that she was able to carry on a conversation.

He made no test of the strength of her mentality, and simply regarded her as a feeble old woman.

Mrs. Kenner testified that she had known the deceased some two or three years, that she had visited her frequently during the last few months of her life, and that she found her very old and feeble of both mind and body, and that she would wander in her talk.

Mr. H. Kenner, another witness for contestant, testified: That he became acquainted with the deceased about a year before her death, and that he became impressed with the fact that she was a very old woman and very feeble physically and mentally. That in November, 1921 (the will was made October 31, 1922) he was requested to prepare a deed of sale made by the old lady to some society. That he had some difficulty in making the old lady understand what it was about.

However, she did finally understand what was wanted of her, and she made her mark to the deed.

The evidence of the foregoing three witnesses is relied on to establish the mental incapacity of the testatrix to make the will, but it is apparent from the mere reading of the testimony that it fails in its purpose.

On the other hand, quite a number of witnesses including some of those who attested the making of the will, testified that the mind of the testatrix was clear and lucid, and that she knew and fully understood what she was doing.

She had expressed the desire several days before of making a will and wanted a notary to write it for her.

In the Succession of Brugier, 83 So. 366, 146 La. 29, we held that testamentary capac-

ity was the ability to comprehend the conditions of one's property and his relations to those who may naturally expect to become the objects of his bounty.

And in a case where the evidence showed that the testator was in an enfeebled condition both mentally and physically, and his mental condition was somewhat abnormal, we found that he was not thereby incapacitated from making a valid will. Succession of Ford, 92 So. 61, 151 La. 571.

In the instant case the condition of the testatrix mentally and physically was that of any ordinary person who has reached the age of 82. There was nothing unusual or abnormal about her that would indicate or suggest that she was not fully capable of administering her affairs and providing by last will the disposition of her property.

Three of the witnesses to the will, Mrs. Evans, Leon Cousin, and Harry Culberson, each testified that Mr. Larose wrote the will, that the testatrix dictated her will to him and he wrote it down, and when he got through he read it over to her to see if it was what she wanted, and that she said it was.

It is further shown that the old lady sent for Leon Cousin, and told him she wanted a notary to make her will; that Cousin saw a notary but could not get one who could write French.

He consulted a lawyer, who advised him that, if he could not get a notary who wrote and spoke French, to get five witnesses who understood and spoke French, and have one of these to write the will in French according to her dictation. The five witnesses were secured, and the will was prepared and signed as already stated; all five of the witnesses being able to write and speak French and who fully understood the will as written and read to the testatrix and the witnesses before being signed.

Of course no one will pretend that the testatrix dictated every word contained in the will, and it may be assumed that the testa-

trix did not dictate the disposing part of the will in the exact language as used.

But that the language fully expressed her desire and what she wanted we entertain no doubt.

[2] After all is said, the only thing with which the court is concerned primarily is the true intent of the testatrix.

It is inconceivable that the five witnesses to the will, who are not shown to have any pecuniary interest in the estate, should have entered into a conspiracy to prepare, forge, and counterfeit a will without the knowledge and consent of the testatrix and three of the said witnesses should perjure themselves in order to sustain the will. And yet that is the effect of the charges made in the petition to annul the will.

[3] The testatrix knew how to write and sign her name, but she affixed her mark to the will in contest, and the reason why she did so was that she had lost the sight of one eye, and this greatly impaired the use of the other eye, which rendered it impracticable for her to write her name. Besides she was very nervous, and her hand trembled so much that she was not able to hold the pen steady long enough at a time to write her name.

We think this fully answers the objection to the will, on the score that the testatrix affixed her mark in place of writing her name.

The statute permits the signature by mark to both forms of nuncupative wills. See Civil Code, arts. 1579 and 1582.

[4] The final attack is leveled at the want of legal qualifications of some of the witnesses to the will; the contention being made that at least two of them, Edward A. Larose and Elly A. Mitchell, were not residents of the place where the will was executed.

The evidence shows that Mitchell was 23 years old, and that his home and principal place of residence was with his mother, who resided in the place where the will was executed.

When he could get no work near his home,

he usually went away to get work, either to New Orleans or to Mississippi. When he was out of a job, he returned to the home of his mother.

He was out of work and at home when he witnessed the will.

He had never established any home of his own; he had no other home than that of his mother, and, under the circumstances, he must be regarded as residing with his mother and in the place where the will was executed.

[5] As to the witness Larose, the evidence is conflicting. He was unmarried, and had a business in the city of New Orleans. He had a home in Mandeville. He usually spent the day in the city, and the night at his home in Mandeville. He claimed at times to be a resident of the city and at other times to be a resident of Mandeville.

He registered as a voter in the city of New Orleans, and stated in his will that he was a resident of that city. He died in the town of Mandeville, and his succession was opened in the city of New Orleans. These circumstances admittedly leave the question of legal domicile and actual residence in grave doubt.

The Code (article 38) declares that the domicile of each citizen is in the parish wherein he has his principal establishment, and the principal establishment is that in which he makes his habitual residence; if he resides alternately in several places, and nearly as much in one as in the other, and has not declared his intention in the manner prescribed by law, any one of the said places where he resides may be considered as his principal establishment, at the option of the persons whose interests are thereby affected.

In view of the fact that the witness had built him a home in Mandeville, and in view of the fact that he spent practically every night at his home, returning to the city of New Orleans each day to look after his business interests, we are of the opinion that his residence may be regarded as being in the

place where the will was made within the meaning of article 1581, requiring five witnesses residing in the place where the will is received.

For the reasons assigned, the judgment appealed from is affirmed.