**143 So. 246**

**Succession of BREAUX.**

**No. 31532.**

June 20, 1932.

See, also, 172 La. 1026, 136 So. 39.

Anna Judge Veters, of New Orleans, for appellants Greene and Veters.

Delvaille H. Theard and Charles I. Denechaud, both of New Orleans, for appellee Loyola University.

Esmond Phelps, Walker B. Spencer, J. Blanc Monroe, and Charles Rosen, all of New Orleans, for appellee Tulane University.

ODOM, J.

Joseph A. Breaux died in New Orleans on July 23, 1926, leaving an estate which he disposed of by last will. After making several special bequests, he disposed of the residue of his estate as follows:

"The residue of my estate I hereby divide into two amounts half each to be disposed of

as follows: I give and bequeath to Tulane University an amount of at least 12,000 a year and at least 12,000 a year to Loyola University. If there is not sufficient amount to justify the appointment of that number their two numbers will have to be decreased. If there is over than enough then the amount above that amount will be applied to increase the number as my intention is that the whole residue of my estate be disposed of as above. It is my will that the amount allowed stated each student for his scholarship be one thousand dollars ($1,000). That this allowance for a scholarship or scholarships be taken from the interest or return of the capital which shall be safely invested. The foundation for these scholarships shall be laid in the two universities in this City at this time. The amount from said interest is to be expended in paying for twenty-four scholarships. At the beginning of every four years of said scholarships (for the scholarship of each shall be four years) those applying for a scholarship will be examined by the superintendent of the high school in which the applicant resides if there is no high school in the parish he shall be examined by the authority having the right of examination in the university in which the applicant applies for examination. In case of vacancy it shall be filled in the same manner as for an original application. At the end of four years another number of pupils will be appointed by the superintendent of the respective parish in which the applicant resides. I appoint Louise Greene and Anna Judge Veters trustees of this fund and to see to safety and investment. In case of the death of these trustees or either of them successor or successors will be appointed by the gentlemen of the faculties."

Louise Greene and Anna Judge Veters, the trustees named in the will, were sent into possession of the residue of the estate by judgment dated March 31, 1927, and have since that date administered the same in accordance with the terms of the will.

They have filed annual accounts showing the revenues which have accrued from investments made, which accounts have been approved and homologated by the court. Admittedly, these revenues or balances now in their hands should be turned over to the Loyola and Tulane Universities of New Orleans, one-half to each, for the establishment of scholarships. The trustees having failed to turn over any of these funds, which up to April 14, 1931, amounted to approximately $128,000, the universities ruled them to show cause why "they should not forthwith pay over the said fund, one half to each of movers, and why movers should not have general relief in the premises."

In answer to the rule to show cause, the trustees admit that they are in possession of the funds and allege that they are "ready and willing and anxious to pay over said revenues to the said universities for the said scholarships and that they have repeatedly offered so to do, requiring that the Universities shall sign receipts for the said revenues in accordance with the stipulations of the duly homologated accounts which are on file herein and made part of this answer." They pray that the rule be discharged and that they "be not ordered to pay over" said funds at present "unless and until the said Universities acknowledge that they are receiving the said revenues for the purposes and in accordance with the stipulations set forth in the duly

homologated accounts of the said trustees; and respondents further pray that this court order the manner in which the said scholarships shall be awarded by the Universities."

The "stipulations set forth in the duly homologated accounts" referred to in the answer and made part of it, read as follows:

Total amount of revenues
for distribution                    $28,313.35
To Tulane University for
fourteen $1,000.00 scholar-
ships to be awarded in ac-
cordance with the terms of
the will of the decedent and
founder, Joseph A. Breaux,
dated November 5, 1925      $14,000.00.
(Copied from account filed April 2, 1928.)

In the same account there is a like stipulation setting apart the same amount to Loyola University.

Upon trial, the rule was made absolute, and the trustees were ordered to pay over forthwith to the universities in equal proportions the sum of $128,000. The trustees appealed.

(1) The real issue between these parties does not so clearly appear from the pleadings to which we have referred, but in oral argument and in the briefs filed, the parties revealed to the court their respective contentions so clearly that they cannot be misunderstood. From the pleadings as amplified by certain correspondence and documents attached and filed in evidence, and the arguments and briefs, we find that the real and only controversy between Miss Greene and Miss Veters, trustees, on the one side, and the universities on the other, is whether the trustees shall have any voice in the manner or method of distributing the scholarships established by the last will of the late Justice Breaux and of selecting the beneficiaries thereof. Miss Greene and Miss Veters earnestly, and conscientiously we are sure, contend that Justice Breaux intended that they should have some part, some voice in the distribution of the scholarships and in the manner of selecting the beneficiaries. The universities, on the other hand, deny that any such right was conferred upon them by the will or that the testator so intended. They ask that the funds be turned over unconditionally to be used by them in accordance with the will, as they may determine.

(2) We have experienced little difficulty in reaching the conclusion that Miss Greene and Miss Veters, the trustees, have erred in their interpretation of the will. We do not think the testator intended to confer upon them the privilege and power which they claim. They contend that the privileges which they now assert were granted them under the following provision of the will:

"I appoint Louise Greene and Anna Judge Veters trustees of this fund and to see to safety *and investment*." (Italics ours.)

The "fund" mentioned is the residue of the testator's estate, the balance or what was left of his property after paying the special legacies. It was the property itself, the corpus of the estate, which was put into the hands of the trustees, and their duties with reference thereto were to see to its safety and investment, that is, to see that the property was kept safe and invested. The word "fund" as used by the testator has no reference to the revenues derived from the investments. These revenues were not to be invested, but

were to be turned over to the universities. The will recites: "I give and bequeath to Tulane University an amount of at least 12,000 a year and at least 12,000 a year to Loyola University. * * * This allowance for scholarship or scholarships be taken from the *interest or return* of the *capital which shall be safely invested.*" (Italics ours.)

■ It is perfectly clear that it was the "capital" which was intrusted into the care and keeping of trustees. They were to see to the safety and investment of the "capital," and not to the safety and investment of the "interest or return of the capital."

The testator did not intend that the trustees should follow up and supervise the expenditure of the interest or returns from his estate. This fund was expressly bequeathed to the universities and "is to be expended in paying for twenty-four scholarships." The provisions of the will as to how these scholarships are to be distributed and the method of selecting the beneficiaries are by no means clear. They are indefinite, uncertain. But that is a matter with which the trustees have nothing whatever to do.

■ (3) The true rule for the interpretation of wills is that the intent of the testator must be ascertained if that be possible. Succession of McBurney, 165 La. 357, 115 So. 618; Succession of Henry, 158 La. 516, 104 So. 310; Succession of Rouquette, 161 La. 155, 108 So. 319; Succession of Maltry, 161 La. 1032, 109 So. 827; Succession of Warren, 162 La. 649, 110 So. 891; C. C. art. 1712.

This will read and construed as a whole shows unmistakably that the testator intended that the "interest or return" from the capital invested be turned over to the universities to be used in accordance with the terms of the will as they understand it, leaving such details as are now in controversy to their good faith, wisdom, and discretion.

In speaking of the scholarships, the testator said:

"The foundation of these scholarships, shall be laid in the two Universities in this city at this time."

The meaning of this provision, like those relating to the method of selection of the beneficiaries, is somewhat vague and indefinite. But when read in connection with other parts of the will, it is quite apparent that the testator intended that the universities should, in their wisdom, interpret the somewhat obscure directions in the will relating to the number and distribution of the scholarships as well as the selection of the beneficiaries of them. We find nothing in the will indicating that it was intended that they must accept suggestions or regulations with reference thereto made by the trustees.

Ultimately the entire residue of the estate will virtually go into the hands of the universities to be administered by them, for the will provides that:

"In case of the death of these trustees or either of them successor or successors will be appointed by the gentlemen of the faculties." This is another indication that the testator had all faith in the universities, and that he trusted their wisdom and discretion.

(4) We attach no importance to the suggestion that the universities have "first by their actions, and second by their acquiescence" recognized the right and authority of the trustees to "supervise the disposition of the scholarship money." The suggestion is

prompted by the fact that copies of the annual accounts filed by the trustees and of the judgments homologating them were served on the universities and that they made no protest. On each of the accounts filed there is a notation under the heading "Distribution of Revenues" showing the amount to be distributed, and the following:

"To Tulane University—$1,000 scholarships to be awarded in accordance with the terms of the will of the decedent and founder, Joseph A. Breaux, dated Nov. 5, 1925, $————." (Copied from Miss Veters' brief.)

"To Loyola University" the same as above.

■ There is nothing in this indicating that the court, which homologated these accounts, intended that the universities should accept the funds under such restrictions as to distribution as might be prescribed by the trustees. All the court did or could do was to approve the accounts, as they were shown to be correct. If the above notations be read into the judgments homologating the accounts, the court did no more than order that the funds be used "in accordance with the terms of the will." This the universities must do.

(5) The trustees argue that the refusal of the universities to accept the funds under such restrictions and regulations as they, the trustees, may prescribe, shows that they do not intend to use them in accordance with the terms of the will.

■ We do not so interpret their conduct. They have always denied, and are now denying, that the trustees have such "visitorial" or supervisory powers over this fund as they claim. That is all.

(6) Lastly, the trustees pray that "this court order the manner in which said scholarships shall be awarded by the Universities."

The question whether the courts would, under any circumstance, have authority to order the manner in which these scholarships are to be awarded is not one raised by the pleadings. That issue is not presently before us and we shall not discuss it.

For the reasons assigned the judgment appealed from is affirmed.