17 So.2d 726

**Succession of LACOUME.**

**No. 37180.**

March 13, 1944.

Curtis, Hall & Foster and Felix H. Lapeyre, all of New Orleans, for opponent and appellant.

Albert B. Koorie, Lewis A. Giraud, Casey, Babin, & Casey, and Paul P. Garofalo, all of New Orleans, for appellee.

PONDER, Justice.

This is an appeal from a judgment dismissing an opposition to an executor's final account and tableaux of distribution.

On December 24, 1940, Mrs. Charles Lacoume, nee Susan Lilly, died testate leaving an estate composed of movable and immovable property.

On June 17, 1930, the deceased executed a nuncupative will by public act, the pertinent provisions reading as follows:

"I have settled with my children for their shares in my husband's estate.

"I leave to my sister, Mary Knower, the sum of Five Hundred Dollars.

"The remainder of my estate I leave to my children and grandchildren as follows:

"One-third of my estate after paying the aforesaid amounts to my sister to each of

my two sons who are now living, to-wit: C. M. W. Lacoume, a better known as W. J. Lacoume, and Lucien A. Lacoume.

"One-third of my estate after paying the bequest to my sister to the children of my deceased son, Charles Lacoume, Jr., to-wit: Louis Lacoume and Hortense Lacoume, wife of Henry Arnold.

"I declare that I have given to my children the following amounts which I desire they shall collate in the settlement of my estate.

"To my son, Charles Lacoume, Jr., I gave him Ten Thousand Dollars and paid for his funeral amounting to Four Hundred and Twenty-five dollars.

"To my son C. M. W. Lacoume I have advanced him Four Thousand Two Hundred and fifty Dollars.

"To my son Lucien Lacoume I have advanced him Four Thousand and Six Hundred and Twenty-six dollars.

"The amounts as recited herein shall be included in my estate and then deducted from the shares of my said children and grandchildren.

"I appoint my son C. M. W. Lacoume, better known as W. J. Lacoume, executor of this my last will and testament and dispense with his furnishing bond.

"This is my last will and testament I revoke any other wills and codicils I may have made"

On December 4, 1940, the deceased executed, by private act before a notary public, a codicil to her will of June 17, 1930,

the pertinent provisions of which read as follows:

"I wish to appoint Lewis A. Giraud as Executor of my will which was made about seven or eight years ago in place of my son William J. Lacoume, who has since died; this Will being in my bank box in the Canal Bank—or National Bank of Commerce at Baronne and Common Streets, New Orleans, La.

"I wish to give to Mrs. Myrtle Lacoume McCullough, my granddaughter, the diamond bracelet which is in my bank box. Should I be able to, I will take it from the box to give to her myself.

"All other provisions in the Will are to remain the same.

"All the articles and household effects at my residence 902 Fourth Street New Orleans, La., are my own and are to be included in my estate. I wish to have my tomb in the Greenwood Cemetery sealed after me and My son, Lucien, are buried therein, provided he is buried therein, otherwise the tomb is to be sealed when it is found that he will not be buried in it, but after I have been buried in it."

The testamentary executor was duly qualified, and the above will and codicil were probated. The testamentary executor filed his final account and proposed tableaux of distribution for homologation.

Mrs. Hortense Lacoume, wife of Henry Arnold and granddaughter of the deceased Mrs. Charles Lacoume, filed an opposition to the final account and proposed tableaux of distribution.

On trial, the opposition was dismissed; the testamentary executor's account ordered approved and homologated; and the funds ordered distributed in accordance therewith. The matter now comes to us by way of appeal.

There were born to Mrs. Charles Lacoume, nee Susan Lilly, three children, namely, Charles Lacoume, Jr., Lucien A. Lacoume and W. J. Lacoume. Charles Lacoume, Jr., and W. J. Lacoume both predeceased the testatrix. Charles Lacoume, Jr., died before the will was executed, and W. J. Lacoume died subsequent to the execution of the will but prior to the execution of the codicil. Charles Lacoume, Jr., was survived by two children, namely, Mrs. Hortense Lacoume, wife of Henry Arnold, now living, and Louis Lacoume, who died some time between the execution of the will and the execution of the codicil. Louis Lacoume left three children, namely, Weston J. Lacoume, Arabel Lacoume and Mrs. Rae Lacoume, wife of George Tonry, all of whom are now living. W. J. Lacoume was survived by only one heir, his daughter, Mrs. Myrtle Lacoume, wife of John B. McCullough.

The controversy in this case evolves itself around the interpretation of the will and codicil.

The final account and proposed tableaux of distribution by the executor are based on a division of the estate, after the payment of the special legacies, into three equal parts, subject to the collations called for in the will, as follows: One-third to Lucien Lacoume; one-third to Mrs. Myrtle Lacoume McCullough, only surviving heir of W. J. Lacoume; and one-third to the children and grandchildren of Charles Lacoume, Jr., deceased, to be divided in the following proportions: one-sixth to Mrs. Hortense Lacoume Arnold and one-eighteenth to each of the children of Louis Lacoume, deceased, namely, Weston J. Lacoume, Arabel Lacoume and Mrs. Rae Lacoume Tonry.

The appellant, Mrs. Hortense Lacoume Arnold, takes the position that the provision in the will, "One-third of my estate after paying the bequest to my sister to the children of my deceased son, Charles Lacoume, Jr., to-wit: Louis Lacoume and Hortense Lacoume, wife of Henry Arnold," constitutes a conjoint legacy, and the whole third of the remainder of the estate accrued to her upon the death of her brother, Louis Lacoume, under the doctrine of accretion.

The appellees, the other heirs, take the position that the final account and proposed distribution are correct.

Article 1712 of the Revised Civil Code provides:

"In the interpretation of acts of last will, the intention of the testator must principally be endeavored to be ascertained, without departing, however, from the proper signification of the terms of the testament."

"In the interpretation of this will, we are to search for the true intention of the testator, as deducible from the whole language of the instrument which he has framed to express his last wishes. If there be obscurity or doubt as to his meaning in any particular clause, we are to bring

other clauses in juxtaposition with it, and deduce, if possible, from all, an interpretation which will make them all harmonize." Labeau v. Trudeau, 10 La.Ann. 164.

"It has been well said that in interpreting or construing a will the intention of the testator is the polar star by which the court is to be guided, and that it is the duty of those who have to expound a will to ascertain the quod voluit by realizing the quod dixit. * * *

"A will should not be so construed as to place in the testator's mouth that which never entered his mind." City of New Orleans v. Hardie, 43 La.Ann. 251, 9 So. 12, 13.

"Whenever the terms and dispositions are ambiguous and doubtful, the law favors that interpretation which will cause the property to be distributed more nearly in accordance with the law. The law favors an equal distribution, and, unless the testator clearly expressed an intention to dispose of his property otherwise, the law holds that he intended that his children should share it equally." Succession of Williams, 132 La. 865, 61 So. 852.

"The first and cardinal rule among the 'General Rules for the Interpretation of Legacies,' in section 7, chapter 6, title 2, book 3, of the Civil Code, is that the intention of the testator must be ascertained. Rev.Civ.Code, art. 1712. All other rules are only means to that end. It was virtually so said in the Succession of Burnside, 35 La. Ann. [708], 719, when the court, referring to articles 1720 to 1722 of the Civil Code, said:

" 'Whatever may be the effect of these articles they cannot be considered as impinging the fundamental rule, formulated by the Code under the same division of general rules for the interpretation of legacies, which enacts that the intention of the testator must principally be endeavored to be ascertained. Rev.Civ.Code, art. 1712 (1705). They must be read along with the recognition of that controlling principle, and be construed in subordination to it.' " Succession of McBurney, 165 La. 357, 115 So. 618, 622. Followed in Succession of Breaux, 175 La. 269, 143 So. 246.

"Article 1712 is the general rule. * * *

"The article is controlling to this extent—the intention of the testator must be ascertained from the text of the will without departing from the proper signification of its terms." Delaureal v. Roguet's Succession, 177 La. 815, 149 So. 464.

■ From an examination of the will, it is apparent that the testatrix intended to dispose of the remainder of her estate, after having provided for special legacies, according to the law of descent and distribution. A mere reading of the will shows that the testatrix, at the time she executed the will, intended to divide the remainder of her estate in three parts. This position is fortified by the fact that she required collation in order that the three parts might be equal and fair to those receiving each of these parts.

At the time the will was made, one of the testatrix' sons, Charles Lacoume, Jr., was dead, and she stipulated that one-third of the remainder of her estate should go to the children and sole heirs of this deceased

son. The other two sons, Lucien Lacoume and W. J. Lacoume, were living at this time.

The testatrix provided in her will for the division of the remainder of her estate among her children and grandchildren in the proportion of one-third to each of her living sons and one-third to the children of her deceased son. Undoubtedly, this contemplated the division of the remainder of the estate in roots. The codicil does not in any wise change this provision of the will. It merely provides for a special legacy and a change in the executor. At the time she executed the codicil, the will was not in her possession. It was in her bank box.

There is nothing in the will to show that the testatrix had any desire to prefer either of her children or the heirs of her deceased son, or that she intended to give any of them an advantage or extra portion. There is no language used in the will that could be construed to convey such an intent.

The appellant contends that at the time the codicil was executed the testatrix was aware of the deaths of her son, W. J. Lacoume, and her grandson, Louis Lacoume, and had she intended to require the remainder of her estate to be divided in roots, she would have so signified this intent in the codicil.

At the time the codicil was executed, the testatrix was not in possession of the will. It was in her bank box. We are not prepared to say that she remembered the particular wording of the will. She had provided for the equal distribution of her estate by roots as they existed. There is nothing in the codicil to show any change of this intent.

"Equality between heirs of the same degree is the cardinal principle of the Louisiana law of inheritance. No deviation is allowed from this rule, save within a narrow limit and by pursuing the forms prescribed by law. If a father desires to prefer one child to another in the distribution of his property, he is bound to state his design expressly, by declaring that the gift or legacy is intended 'as an advantage or extra portion,' or 'using other equivalent terms.'" Montgomery v. Chaney, 13 La. Ann. 207.

In view of our conclusion, the law of conjoint legacies is not applicable. For the same reason, the doctrine of accretion is not applicable.

For the reasons assigned, the judgment of the trial court is affirmed at appellant's cost.