172 So.2d 63 (1965)
247 La. 419
Succession of Catherine E. McCARRON.
No. 47441.
Supreme Court of Louisiana.
February 23, 1965.
Bernard J. Capella, New Orleans, for defendant, appellee and applicant.
Bush & Moresi, Paul G. Moresi, Jr., Abbeville, for plaintiffs-respondents.
HAMITER, Justice.
Catherine E. McCarron, a feme sole, died testate on July 7, 1963. Her surviving heirs were Joseph William McCarron, Sr., a brother, and Merlin E. McCarron, Jr. and Janeth McCarron Moresi, children of Miss McCarron's other brother, Merlin E. McCarron, Sr., who had predeceased her.
The succession of the testatrix was opened; and her will, which is in olographic form and contains five and one-half letter size pages, was admitted to probate. It begins: "This is my last will and testament. In the event of my death, I leave all personal and real property in my name to my two brothers, Joseph William McCarron, Sr., and Merlin E. McCarron, Sr., to be shared equally.
*64 "Out of estate left to my two brothers it is understood all outstanding bills are to be paid.
"Also out of my estate, I make the following special bequests." Thereafter, the testament sets forth numerous particular bequests of money, jewelry and household effects.
This suit was instituted by Merlin E. McCarron, Jr. and Janeth McCarron Moresi, against their uncle, Joseph W. McCarron, Sr. (who had qualified as dative testamentary executor), they seeking to be recognized as owners and placed in possession of one-fourth of the residuum of the estate.
The district court dismissed the suit, and it recognized the defendant, Joseph E. McCarron, Sr., as being entitled to all of the succession property remaining after payment of the particular legacies.
The judgment was reversed by the Court of Appeal, Fourth Circuit. It declared the plaintiffs to be the owners of an undivided one-fourth interest in the succession property after the particular bequests were satisfied. La.App., 166 So.2d 47.
On the application of the defendant we granted certiorari. 246 La. 861, 167 So.2d 675.
Plaintiffs predicate their suit on the theory that the legacy made to the two brothers was distributive and not conjoint; and that, consequently, the bequest to Merlin E. McCarron, Sr., which lapsed because of his prior death, did not accrue to the benefit of his co-legatee (the defendant herein) but, rather, it fell into intestacy and devolved upon the testatrix's legitimate heirs. They cite and rely on Articles 1706, 1707 and 1709 of the Revised Civil Code, and the cases of Succession of Lambert, 210 La. 636, 28 So.2d 1, Succession of Rougon, 223 La. 103, 65 So.2d 104, and Succession of Milne, 230 La. 729, 89 So.2d 281.
The defendant, on othe other hand, insists that the legacy was a conjoint one under Revised Civil Code Article 1707, and that the lapsed portion thereof went to him by accretion. In support of this contention he cites Parkinson v. McDonough, 4 Martin (N.S.) 246, Lebeau v. Trudeau, 10 La.Ann. 164 and Mackie v. Story, 93 U.S. 589, 23 L.Ed. 986, taking the position that such cases are distinguishable from, and were not overruled by, those relied on by plaintiffs. The defendant further argues that the bequest was a universal legacy and that, even if it was not conjoint, the unaccepted part fell into the residuum of the estate and inured to him as the universal legatee.
The above mentioned codal provisions read as follows: "1706. [1699]. AccretionApplication of doctrine restricted. The right of accretion relative to testamentary dispositions, shall no longer subsist, except in the cases provided for in the two following articles.
"1707 [1700] (N 1044). AccretionConjoint legacyAccretion shall take place for the benefit of the legatees, in case of the legacy being made to the several conjointly.
"The legacy shall be reputed to be made conjointly when it is made by one and the same disposition without the testator's having assigned the part of such co-legatee in the thing bequeathed.
"1709 [1702]. AccretionResiduary estate.Except in the cases prescribed in the two preceding articles, every portion of the succession remaining undisposed of, either because the testator has not bequeathed it, either to a legatee or to an instituted heir, or because the heir or the legatee has not been able, or has not been willing to accept it, shall devolve upon the legitimate heirs." (It is conceded that Revised Civil Code Article 1708, which provides the second exception referred to in Article 1706, is inapplicable to this case.) (Italics ours.)
Therefore, the initial issue herein is whether the testament's phrase of "to be *65 shared equally", which follows the disposition to the testatrix's two brothers, constitutes an assignment of parts in the bequest. If it does the legacy fails as a conjoint one and, as a result, the lapsed portion does not accrue to the benefit of the defendant, the surviving co-legatee.
Because there appear in the jurisprudence the cases relied on by defendant, which seemingly tend to support his contention and have not been expressly overruled, it becomes necessary to determine whether they have been repudiated by implication in the later jurisprudence or, if not, whether they should now be followed. All of such decisions were thoroughly analyzed and fully discussed in our opinion in Succession of Lambert, supra, and it would serve no useful purpose to repeat such a detailed analysis here. Nevertheless, a resolution of the initial issue requires a brief review of them.
In Parkinson v. McDonough this court was called on to determine whether a bequest to four minors (orphan children who had been under the charge and care of the testator prior to his death), and which contained the phrase "to be equally divided among them", was a conjoint legacy. The court there, as was pointed out in Succession of Lambert, supra, reluctantly recognized a distinction, admitted by some of the French authorities, between a bequest to several persons "to be divided equally" and a legacy to many "in equal portions". We said that the former, because it contained words connoting future action, may be interpreted to relate only to the manner of the execution of the disposition and would not then be an assignment of parts; whereas, the latter would affect the bequest itself, it constituting an assignment of parts which renders the legacy non-conjoint.
However, the court admittedly permitted such a distinction in order to give effect to its conclusion (arrived at from an appreciation of the entire will) that the testator wished the bequest to be enjoyed by the named children, and by them alone; and that he particularly intended the effect of it to be a conjoint legacy. We observed that the distinction was "extremely subtle and refined", and that "We might hesitate much in adopting this method of construction, were it not sanctioned by the authorities cited in behalf of the appellants: the doctrine contended for is fully supported by the Commentary of Toullier on the 1044th article of Code Napoleon, which we have already shown to be precisely similar to that of our own code on the same subject." (Our own codal provision referred to was Article 195 of the Code of 1808, now Article 1707 of the Code of 1870.)
But in the Parkinson decision the court did not note, as was suggested in a dissent in the later case of Lebeau v. Trudeau, supra, that the French authorities were in conflict with respect to admitting such distinction. (See also a treatment of the French authorities in the dissenting opinion in Succession of Wilcox, 165 La. 803, 116 So. 192, as well as in a concurring opinion in Succession of Maus, 177 La. 822, 149 So. 466.) Further, the opinion failed to consider that neither our Article 1706 (which reprobates the doctrine of accretion except in the specified two instances and was Article 194 of 1808) nor our Article 1709 (Article 196 of the Code of 1808) was contained in the Code Napoleon. As was aptly said in the dissenting opinion in the Lebeau v. Trudeau case: "Had these articles existed in the Code Napoleon, we are not permitted to suppose that Marcade would have maintained, as we find him doing, in opposition to Duranton and others, that the right of accretion of legacies was not limited to the cases mentioned in articles 1044 and 1045 of the French Code."
Moreover, it occurs to us that perhaps these articles (1706 and 1709) were placed in our Code for the specific purpose of resolving (in our law) the conflict existing among the French authorities, and rejecting the view of Marcade and the other French writers relied on in the Parkinson opinion.
*66 The disposing clause considered in Lebeau v. Trudeau, supra, provided that "my property shall be divided, in equal portions, among the persons hereafter named * * *." The court, without reference to the Parkinson case, interpreted this language as showing an intention on the part of the testator to regulate the future distribution of his estate rather than to constitute an assignment of parts thereof. However, this construction, like that in Parkinson v. McDonough, was adopted after it had been found that to reach any other result would be to "fly in the face of the testator's clear and unequivocal intention; and surely such a result would not be permitted, unless there is some insurperable provisions of law to override that intention."
Mackie v. Story, supra, was decided by the United States Supreme Court. It adds nothing to the jurisprudence, for the court merely followed the decision in the Parkinson case as providing an interpretation of the law of Louisiana on the subject.
In Succession of Schonekas, 155 La. 401, 99 So. 345, the testatrix willed to her two named daughters, "share and share alike", the disposable portion of her estate. The court set forth the holdings of the Parkinson and Lebeau cases, but pointed out that the language of the bequest with which it was then concerned bore no future connotation; that such language could not, therefore, be interpreted as merely referring to a regulation of future distribution; and that it was typical of the example given in the Parkinson case as a bequest with an assignment of parts, one-half to each. Consequently, we concluded that the bequest was not conjoint.
However, Succession of Schonekas was overruled in Succession of Wilcox, supra, the court there stating that (in its opinion) no difference really existed between the two phrases, and that the rule of Parkinson v. McDonough and Lebeau v. Trudeau should govern in both instances (this without giving any consideration to the bases of the holdings in those cases). While professing to follow the Parkinson and Lebeau decisions, in other words, the court in Succession of Wilcox actually eradicated their reasoning. It particularly failed to note that each of such decisions did not say that in all cases the phrase "to be shared equally" (or language of similar future import) would affect only future distribution and not the bequest, but, rather, that each said that the language used could be so construed in order to give effect to the testator's intent as indicated by other language of the will.
In Succession of Lambert, supra, we reexamined our Wilcox decision, in the light of the reasons given for the holding in Parkinson v. McDonough and we reinstated the conclusion in Succession of Schonekas that a bequest to two or more persons "share and share alike" contained an assignment of parts within the meaning of Article 1707 and, hence, was not a conjoint legacy. Such a bequest, we said, is a division of the legacy, leaving a definite portion to each. We recognized the distinction made in the Parkinson and Lebeau cases, but found that no other portion of the will then before us was indicative of any specific intent on the part of the testator; we held that the disposing language thereof was not suggestive of future operation; and we concluded that, consequently, those cases were inapplicable. We did, however, specifically overrule Succession of Wilcox and Succession of Maus (the latter had followed the Wilcox decision) which had applied, absolutely, the holding of the Parkinson case to bequests to several persons "share and share alike".
On the basis of the distinction referred to above the defendant, in his brief to this court and after quoting from the Lambert case, comments: "It is important to recognize that the two cases overruled (Succession of Wilcox, 165 La. 803, 116 So. 192, and Succession of Maus, 177 La. 822, 149 So. 466), were cases where the language `share and share alike' was used in the will. And more important to note that, although *67 the Court fully discussed the cases which contained `to be equally divided' language, the Court took great pains not to overrule them. This can only mean that the Court recognized the difference between a present division of a gift (share and share alike) and a future division of a gift (to be divided equally). * * *"
However, our recognition in the Lambert case of such a distinction did not constitute an approval thereof. We refused to overrule the Parkinson and Lebeau cases simply because they could be distinguished and it was, hence, unnecessary for us to do so. We were careful, however, to include in the opinion certain language which would preclude any notion that we had approved their reasoning. Thus, we stated: "It is unnecessary for us to view the instant case, to the consideration of which we return, in the light of the subtle distinction, adopted by some of the French commentators and given effect by this court on numerous occasions, between a division of the gift itself and that pertaining to the execution or enjoyment of it in the future. Neither are we required to determine now whether or not such a distinction be sound and should be continued in our jurisprudence. * * *"
On the other hand, we cannot agree with counsel for plaintiffs that Succession of Rougon and Succession of In re Milne, both supra, have repudiated by implication the Parkinson and Lebeau decisions. In Succession of Rougon our conclusion that the legacy assailed was not conjoint was based on our finding that the testatrix intended that it be distributive, all as shown by certain other provisions of the will. A careful reading of the opinion in In re Succession of Milne discloses that the lands involved (which one of the co-legatees claimed by accretion) were bequeathed by the testator to four named charitable institutions by use of the language "* * I give and bequeath in equal shares or interests of one fourth to each, all of my lands on the Bayou St. John and on the Lake Pontchartrain, * * *." The bequest, like that in the Lambert case, was not couched in language suggestive of future operation. Moreover, it specifically set forth the share (a one-fourth interest) each legatee was to receive.
If we are correct in our appreciation of Parkinson v. McDonough and Lebeau v. Trudeau, both supra, which is that they simply held that the language "to be divided" may, in some cases, be interpreted as relating to the future disposition, and not to the bequest itself, when such an interpretation will effectuate the obvious intention of the testator (as expressed elsewhere in the will that the co-legatees should benefit by any lapse as to the part of one), then those holdings need not be disturbed. Because a giving effect to the true intention of the testator has always been of paramount concern to this court in construing testaments. Indeed, the Revised Civil Code in Article 1712 so directs. (As an example, in Succession of Lacoume, 205 La. 511, 17 So.2d 726, we held that accrual did not operate on a bequest, which might have been treated as being conjoint and subject to accretion, inasmuch as other portions of the will indicated a contrary intention on the part of the testator.)
But if the discussed early decisions mean that, in the absence of any showing of intent, the phrase "to be divided equally" does not constitute an assignment of parts, and differs from the phrases "in equal portions" and "share and share alike", then we do not choose to follow them. We consider a distinction of that kind, as a hard and fast rule of testamentary construction, is entirely too "subtle and refined" to stand as the basis for the interpretation of wills which in many, if not most, cases are composed by persons of ordinary understanding and not by judicial writers.
It is our conclusion, therefore, that the bequest in question did contain an assignment of parts as to the co-legatees named and was not conjoint. Consequently, *68 the lapsed portion failed to accrete to the surviving legatee. Rather, under the provisions of Revised Civil Code Article 1709, above quoted, it devolved on the legitimate heirs.
We now turn to the defendant's second contention, it being that he is entitled to the lapsed portion, regardless of whether the bequest is conjoint, because he is a universal legatee. According to our view of the will it would seem that he is not a universal legatee; but, rather, he and his deceased brother were made co-legatees under a universal title, inasmuch as there was an assignment of parts in the bequest respecting the remaining portion of the testatrix's estate, pursuant to Revised Civil Code Article 1612 which reads: "Definition.The legacy, under a universal title, is that by which a testator bequeaths a certain proportion of the effects of which the law permits him to dispose, as a half, a third, or all his immovables, or all his movables, or a fixed proportion of all his immovables or of all his movables."
Furthermore, Revised Civil Code Article 1704 provides that a legatee under a universal title may "benefit by the failure of those particular legacies" which he was bound to discharge. In the instant case the failing legacy was not a particular bequest, nor was it such as a surviving co-legatee under a universal title would have been bound to discharge had it not lapsed. Therefore, the defendant cannot benefit by the failure. See Compton v. Prescott, 12 Rob. 56, Deshotels et al. v. Soileau, 14 La.Ann. 745 and Succession of Tertrou, 217 La. 901, 902, 47 So.2d 681.
But assuming that the testatrix's two brothers were to be considered as universal legatees, nevertheless, under the provisions of Revised Civil Code Articles 1706 and 1709 (above quoted), one is not entitled to benefit by the inability of the other to take his portion when the legacy is not conjoint. Article 1706 reprobates accretion of a lapsed legacy unless the bequest, in which it is made, is conjoint; and Article 1709 reiterates particularly and specifically that property remaining undisposed of because a legatee or an instituted heir has not been able to accept it shall, unless the bequest is conjoint, devolve upon the legitimate heirs.
The correctness of such an interpretation of these articles is fortified by a declaration in the second paragraph of Revised Civil Code Article 1022, dealing with the question of accretion as it applies to renounced successions, which declaration was not contained in the counterpart of the Code Napoleon (Article 786). Such declaration, in other words, was one of the innovations in our code, just as were Articles 1706 and 1709. Article 1022 recites: "Distribution of renounced succession. Right of accretion.The portion of the heir renouncing the succession, goes to his coheirs of the same degree; if he has no coheirs of the same degree, it goes to those in the next degree.
"This right of accretion only takes place in legal or intestate successions. In testamentary successions, it is only exercised in relation to legacies, and in certain cases." (Article 786 of the Code Napoleon provided merely that "The portion of the heir renouncing the succession, goes to his coheirs; if he has no coheirs, it goes to those in the next degree.") (Italics ours.)
Nowhere do we find any codal provision which would except a universal legatee from the operation of Articles 1706 and 1709. Hence, it is obvious that the redactors, in placing these articles in our code and in dealing with renounced and otherwise lapsed legacies, particularly expressed the idea that accretion should not take place among testamentary co-legatees unless the bequest was made to them conjointlythat is, in one and the same disposition without the assignment of parts. And since the instant bequest was not made conjointly to the testatrix's brothers, no accrual takes place in favor of the defendant of the portion which, concededly, *69 would have gone to the deceased brother had he survived the testatrix.
For the reasons assigned the judgment of the Court of Appeal is affirmed. The defendant shall pay all costs.
HAMLIN, Justice (concurring).
While I was one of the attorneys in the Succession of Maus, 177 La. 822, 149 So. 466, which was overruled by the Succession of Lambert, 210 La. 636, 28 So.2d 1, I perceive the distinction between this case and the Maus Case.
It is my view that the majority opinion in this case effects the intention of the testatrix.
Under the circumstances, I concur.