691 So.2d 1374 (1997)
SUCCESSION OF Mercedes Bland SCHIRO.
No. 96-CA-1567
Court of Appeal of Louisiana, Fourth Circuit.
April 9, 1997.
Rehearing Denied April 30, 1997.
*1375 Henry O'Connor, Jr., New Orleans, in Proper PersonAppellee.
James J. O'Connor, New Orleans, in Proper PersonAppellee.
A.D. Freeman, Byron Ann Cook, New Orleans, for Appellants Hugh B. O'Connor and Florence Civello, and Respondents Theresa Bland Cuccia, Hugh B. O'Connor and Alva Clark.
Vincent T. LoCoco, Vincent B. LoCoco, Many & LoCoco, New Orleans, for Appellee Florence O'Connor Onstad.
Dan D. Schaneville, Schaneville & Baringer, Baton Rouge, for Appellee Verinice Mayley O'Connor and Shan O'Connor.
David F. Edwards, Katy W. Kimbell, Jones, Walker, Waechter, Poitevent, Carrere & Denegre, New Orleans, for Appellee Gayle Higgins Jones.
Before BYRNES, JONES and LANDRIEU, JJ.
LANDRIEU, Judge.
This is an appeal of a trial court judgment interpreting an olographic will and codicil which determined the inheritance rights of the legatees of Mercedes Bland Schiro who died on January 16, 1994, in New Orleans. Mrs. Schiro's will was dated November 5, 1984. It included an olographic codicil on the second page dated April 27, 1992 and a second olographic codicil dated June 29, 1989, each of which was probated with the will. Mrs. Schiro died without having had any children, but she had seven brothers and sisters, many of whom had children.
Essentially, in her will, Mrs. Schiro divided her estate into four equal parts, giving each of the first three parts to a specific sister, Florence O'Connor, Bella O'Connor or Theresa Cuccia, and that sister's descendants. Mrs. Schiro then divided the fourth part of her estate among various nieces and nephews, even if they already inherited through one of the first three dispositions.
Several months after Mrs. Schiro's succession was opened, Henry O'Connor and James J. O'Connor, two grandsons of Florence O'Connor, filed an action for declaratory judgment in the succession proceeding, seeking an interpretation of a particular legacy in Mrs. Schiro's will. Named as defendants were the co-executors, Hugh O'Connor and Florence Civello[1], and all others having an interest in the succession under the interpretation of the disputed legacy proposed by the co-executors.
In addition, the co-executors named Gayle Higgins Jones as a third-party defendant and asserted a separate action against her, seeking interpretation of two other legacies contained in Mrs. Schiro's will contrary to Ms. Jones's interests.
After a trial, the trial judge rendered judgment interpreting the first disputed legacy consistent with that proposed by Henry and James O'Connor and contrary to that proposed by the co-executors. Also, the trial judge ruled in favor of Gayle Higgins Jones and against the co-executors on the dispute between them.

FACTS
Mrs. Schiro was one of eight children born to Henry and Theresa Bland.[2] Her deceased sister, Bella O'Connor, had four children Michael, Theresa, Alva, and Hugh. Michael died before Mrs. Schiro executed her will, and Theresa died after she made her will. Michael was survived by three children, and Theresa had one living child, Gayle Higgins Jones.
Mrs. Schiro's deceased sister, Florence O'Connor, had three sonsJames, Jr., Henry, and John. Henry and John died before Mrs. Schiro executed her will, and James, Jr. died after she made her will. James, Jr. was survived by two childrenVerinice Mayley *1376 and Florence Onstad. Henry was survived by four childrenHenry, Jr., James, John, and Mercedes. John was survived by two childrenShan and Sharon.
The first part of Mrs. Schiro's residuary bequest was "[o]ne fourth to my deceased sister Florence Florence (sic) O'Connor children." The problem with this bequest is that only one of Florence O'Connor's children was living when Mrs. Schiro wrote her will. The trial judge determined that when Mrs. Schiro wrote "children" here, she intended "grandchildren."
The second part of Mrs. Schiro's residuary bequest was "[o]ne fourth to my deceased sister Bella O'Connor children namely Theresa Mary Higgins[,] Alva Clark and Hugh O'Connor."
The fourth[3] part of Mrs. Schiro's residuary bequest was:
The last fourth to be divided as follows Two (2) fourths of the last fourth to my niece Florence Civello [,] One (1) fourth of that last fourth to my niece Theresa Mary Higgins and the last fourth of that fourth to be divided between my niece Anna Holton my (sic) Henry O'Connor, James O'Connor and Mercedes O'Connor.
The problem with the second and fourth part of the residuary bequest is that Mrs. Higgins died in October of 1991, and thus she predeceased Mrs. Schiro. The trial judge used an invalid codicil[4] as corroboration of Mrs. Schiro's intent that these legacies go to Mrs. Higgins's daughter, Gayle Higgins Jones.
The co-executors appeal this judgment, assigning as error the failure to find that the legacy to the Florence O'Connor children or the legacies to Theresa Mary Higgins had lapsed under La. Civ.Code art. 1697.
Appellees are Florence O'Connor Onstad, Verinice Mayley O'Connor, Shan O'Connor, Gayle Higgins Jones, Henry O'Connor and James O'Connor. "Respondents to Appeal[5]," who are aligned with the co-executors, are Theresa Bland Cuccia, Hugh B. O'Connor[6], and Alva Clark.

DISCUSSION
Appellee, Florence O'Connor Onstad filed peremptory exceptions of res judicata, no cause of action and no right of action, claiming that the only appellants, the coexecutors, have no interest in this appeal in their capacities as co-executors. Furthermore, Ms. Onstad claims that since no legatee adversely effected by the judgment has appealed, the declaratory judgment is final as to them.
At the outset, we note that Ms. Onstad has improperly characterized her argument; instead of raising peremptory exceptions to appellants' appeal, Ms. Onstad should have filed a motion to dismiss the appeal under La.Code Civ. Proc. art. 2162. Nonetheless, there is no merit to her arguments, regardless of their characterization.
La.Code of Civ. Proc. art. 2084 provides:
A legal representative may appeal any appealable judgment rendered against him or affecting the property which he is administering, for the benefit of the person whose property he administers or whom he represents, whenever he considers an appeal necessary or advisable.
Specifically with regard to declaratory judgments, La.Code Civ. Proc. art. 1877 provides that all declaratory judgments may be reviewed as other orders, judgments, and decrees. Therefore, our statutory law envisions the appeal brought by the co-executors in this case.
Moreover, we agree with the reasoning offered by the Court in Succession of Vatter, 191 La. 875, 186 So. 597, 598 (1939):
It is clear, we think, that an executor may appeal from a judgment interpreting the will. It is the duty of an executor to carry out the provisions of the will as he *1377 understands them, the will being the law which governs his official actions. If the interpretation placed upon the provisions of the will by the trial court is contrary to the view entertained by the executor and his counsel, the executor may appeal from such ruling in order to have the controversy settled by a court of last resort.
It is not necessary, therefore, for those legatees who are aligned with the executor's position to separately appeal.[7] We find no merit to Ms. Onstad's exceptions.
On the merits of the appeal, in seeking the declaratory judgment, Henry and James O'Connor argued that by directing the legacy to Florence's "children," being fully aware of the deaths of Henry and John and that only one of Florence's children was living, Mrs. Schiro intended the legacy to go to Florence's grandchildren. Gayle Higgins Jones argues that the face of the will, as well as the obvious lack of legal counsel in its drafting, the invalid codicil, plus her uncontroverted testimony at trial, all show that Mrs. Schiro intended for her to inherit her mother's residuary legacy.
Arguing that the legacy to the Florence O'Connor children and one of the legacies to Theresa Mary Higgins (one-fourth of the last fourth) lapsed, the co-executors propose that these amounts should be distributed to the remaining residuary legatees in proportion to their interest in the residue. As to the legacy to the Bella O'Connor children, the co-executors proposed that the bequest to Theresa Mary Higgins is a conjoint legacy and thus, by accretion, goes to Alva Clark and Hugh O'Connor in equal shares.[8]
The Louisiana Civil Code offers the following guidance for the interpretation of legacies:
Art. 1712. Intention of testator
In the interpretation of acts of last will, the intention of the testator must principally be endeavored to be ascertained, without departing, however, from the proper signification of the terms of the testament.
Art. 1713. Sense which gives effect
A disposition must be understood in the sense in which it can have effect, rather than that in which it can have none.
Art. 1715. Interpretation to ascertain intent
When, from the terms made use of by the testator, his intention can not be ascertained, recourse must be had to all circumstances which may aid in the discovery of his intention.
Therefore, the intent of the testator is the paramount consideration in determining the provisions of a will, and, when a will is free from ambiguity, the will must be carried out according to its written terms, without reference to information outside the will. Succession of Williams, 608 So.2d 973 (La.1992); Carter v. Succession of Carter, 332 So.2d 439 (La.1976). If, however, a provision in a will is subject to more than one equally reasonable interpretation, then the court may consider all circumstances existing at the time of the execution of the will, and not just the language of the will, which may aid in determining the intent of the testator. Id.
On Mrs. Schiro's intent, the trial judge stated in his Reasons for Judgment:
It seems obvious that when a testator sits down to write a will the intention is to dispose of all assets. Here the testatrix's intention was to dispose of all of her property to the heirs that she wished to include. And it seems that she clearly intended to prefer some of her relatives over others.
Also, the testatrix obviously confected her various dispositions without counsel and the law is apparently indulgent in such cases and directs courts to ascertain the testator's intention, if it is at all possible....

*1378 Nothing however is to be "interpreted" if the will is clear and unambiguous on its face. Here, however, the contents of the dispositions leave much to be desired and the question of her "intention" is foremost now.
Specifically regarding the bequest to the Florence O'Connor children, the trial judge stated:
Almost all ambiguity in this case can be solved if one simply interpret the word "children" in the first one-fourth bequest to Florence's children, in the same manner as was done in the Succession of Lacoume [205 La. 511], 17 So.2d 726 (La.1924 [1944]). This was obviously her intention because she had been to the funeral of both Henry and John O'Connor and knew that James O'Connor was in a nursing home in precarious health.
Understanding the word "children" to mean grandchildren is far more logical and requires less mental gymnastics than having "children" mean "child" as only James was alive; and all agree the testatrix was knowledgeable and aware at all times until her death. Even after James was deceased, she did not in a later codicil, see fit to find it necessary to explain or change her bequest to Florence's children.
Thus, in accordance with La. Civ.Code art. 1715, the trial judge first found that Mrs. Schiro's bequest to the Florence O'Connor children was ambiguous. Having done so, the trial judge then considered relevant circumstances, such as Mrs. Schiro's failure to make a codicil to clarify the bequest, to reach a conclusion about Mrs. Schiro's intent in this regard. Moreover, the trial judge's conclusion that Mrs. Schiro meant grandchildren when she identified the Florence O'Connor children is not contrary to the definition of "children" in our Civil Code. La. Civ.Code art. 3506 states in part:
Whenever the terms of law, employed in this Code, have not been particularly defined therein, they shall be understood as follows:
8. Children.Under this name are included those persons born of the marriage,... as well as descendants of them in the direct line.
In the absence of manifest error, an appellate court should not disturb the factual finding of the trial court where there is evidence before the trier of fact which upon its reasonable evaluation of credibility, furnishes a reasonable factual basis for its finding. Succession of Mitcham, 513 So.2d 345 (La. App. 4th Cir.), writ denied, 514 So.2d 1177 (La.1987). Considering what was presented to the trial judge, we cannot find that he was clearly wrong in his conclusion regarding the bequest to the Florence O'Connor children.
With regard to Mrs. Schiro's legacies to Theresa Mary Higgins, however, we find that the trial judge erred in concluding that these legacies should go to Ms. Higgins's daughter, Gayle Higgins Jones. In his Reasons for Judgment, the trial judge stated:
It is therefore the opinion of this court that the intention of the testatrix can best be explained by a very simply (sic) formula; to-wit: It was this testatrix's intention to leave her wealth to her three sisters or their heirs unless any were specifically excluded.
. . . . .
This leaves only the distribution of the ¼th of the last fourth part left to Theresa Mary Higgins. By reference to the court's formula, it is believed that the testatrix intended this to be an additional portion to Gayle Higgins Jones Voshein.
In addition to the will and codicil probated in this estate; the deceased made two codicils, improper as to form which were not probated as valid. These were typed and both were signed with an agreed authentic signature by the deceased.... [The one] dated July 20, 1991 is an instrument, typed and signed, proporting (sic) to transfer all of the assets bequeathed to Theresa Mary Higgins to her sole and only heir Gayle [Jones].
While this court readily understands that the instrument referred to above is not a valid codicil, it does exist. In this case, testamentary intent can be assisted by first determining what logically and legally was the "intention" of the deceased and then using this "instrument" or letter, *1379 not as a legally documented codicil and not as primary evidence, but only as corroboration of what is believed to be the full intention of the deceased....
The error made by the trial judge was not in using the invalid codicil as corroborative evidence, but in searching for Mrs. Schiro's intent as to these bequests at all. Because both the bequest to the Bella O'Connor children and the specific bequest to Ms. Higgins were clear and unambiguous, there was no reason for the trial court to attempt to determine Mrs. Schiro's intent.
Nevertheless, because it appears that Mrs. Schiro died believing that she had left to Gayle Higgins Jones, her great-niece, that which she had intended to leave to her deceased niece, this Court has searched for a rationale to honor her belief without doing violence to the law governing donations. We are unable to find such a rationale.
It is clear that in her valid olographic will Mrs. Schiro made specific bequests to her niece, Ms. Higgins. It is equally clear that she made no mention of Ms. Higgins's daughter should Ms. Higgins predecease Mrs. Schiro. La. Civ.Code art. 1697 provides:
The testamentary disposition becomes without effect, if the person instituted or the legatee does not survive the testator.
Mrs. Schiro, presumably aware that her legatee, Ms. Higgins, was very ill, attempted, on July 20, 1991, to make a codicil to her will solely to make Gayle Higgins Jones a legatee should Ms. Higgins predecease her. That codicil was invalid as to form. Ms. Higgins died in October 1991, and Mrs. Schiro died in January 1994.
Irrespective of Mrs. Schiro's intentions, Gayle Higgins Jones was omitted by name and reference from Mrs. Schiro's will and was not added by the invalid codicil. There is no rationale to support making her a legatee which is not contrary to law. We find, therefore, that the legacies to Ms. Higgins lapsed. In accordance with La. Civ.Code art. 1707, Ms. Higgins's portion of the bequest to the Bella O'Connor children goes to Hugh B. O'Connor and Alva O'Connor Clark. In accordance with La. Civ.Code art. 1704 and because Mrs. Schiro wrote in her will that the rest of her estate was to be divided into four parts, the fourth of the last fourth of her estate which she left to Ms. Higgins goes to the residuary legatees in proportion to their share of the residue.
Accordingly, we affirm that portion of the declaratory judgment interpreting the bequest to the Florence O'Connor children, and we reverse that portion of the declaratory judgment pertaining to the legacies to Theresa Higgins. The case is remanded to the Trial Court for further proceedings. The costs of this appeal are to be assessed half to the co-executors and half to the six appellees.
AFFIRMED IN PART; REVERSED IN PART.
NOTES
[1] Florence Civello is the daughter of another sister of Mrs. Schiro.
[2] For simplicity, we will outline only that portion of the family tree which is pertinent to this appeal.
[3] There is no dispute over the third part of the residuary bequest.
[4] The parties do not dispute that Mrs. Schiro left several typed codicils, executed by her but not in valid form.
[5] Neither the Code of Civil Procedure nor applicable Rules of Court authorizes this filing.
[6] The co-executors are attempting to interject themselves in the appeal in their capacities as legatees.
[7] Hence, we accord no significance to the "responses to appeal" filed by several of the heirs, except to point out that the responses are not answers to the appeal authorized under La.Code Civ. Proc. art. 2133.
[8] At trial, the co-executors took the position that any lapsed legacies passed through intestacy.